BAUER *v.* BAUER.

(*Knoxville,* September Term, 1946.)

Opinion filed November 30, 1946.

TAYLOR & BADGETT and WILLISTON M. Cox, all of Knoxville, for complainant.

HARLEY G. FOWLER, of Knoxville, for defendant.

MR. SPECIAL JUSTICE PAUL CAMPBELL delivered the opinion of the Court.*

*Sitting for Mr. Justice Chambliss.

In this case Morris G. Bauer, who will be referred to hereinafter as the complainant, filed in the Chancery Court of Knox County, Tennessee, a petition for divorce against Sara Tucker Bauer, a non-resident, whose residence was said to be Washington, D. C. The bill was filed on February 13, 1946. Publication was made for the defendant. On March 22, 1946, a *pro confesso* was taken. Thereafter and on March 23, 1946, a final decree of divorce was entered.

On April 19, 1946, within thirty days after the entry of final decree of divorce and within the term, the original defendant, Sara Tucker Bauer, who will be referred to hereinafter as petitioner, filed a petition in the Chancery Court seeking to have the divorce decree set aside and to be allowed to file an answer in the cause. The petition was duly sworn to and the answer, which was tendered with the petition, was sworn to. The petition set forth, in substance, that she did not receive a copy of the publication, despite the facts that the complainant knew her address but failed to give it to the Clerk of the Court; that she was not informed as to any date when any reply or answer should be made; that she conferred with a reputable attorney in Washington and was advised that until papers were served upon her she need not take any steps in the matter; that her next information with regard to the suit was that the final decree had been entered. In her petition petitioner states that the complainant is not a *bona fide* resident of Knox County, Tennessee; that he had been temporarily assigned to duty by the War Department to serve there between September 1936 and June 1940; that since that time he has had nine official details; that he had no intention to establish a residence there and took no steps to terminate his domicile in Cincinnati, Ohio; that his domicile in Cincinnati had been

recognized by records of the War Department since he entered the Army twenty-two years before this suit was filed; that a short time before this suit was instituted complainant had employed a lawyer in Cincinnati to institute divorce proceedings there; that he recognized that his residence was at Cincinnati. The petitioner further set forth that there was no ground for divorce against the petitioner as shown by the answer tendered with the petition; that the complainant had repeatedly requested her to file divorce proceedings against him and that his conduct had been continuously such as to entitle her to an absolute divorce from him; that complainant had repeatedly assured her that if she would obtain a divorce or permit him to do so, he would provide for her support and maintenance, for which no provision was made in the decree.

Attached to the petition, as Exhibit A, was a communication from counsel for complainant, in which petitioner was advised of the filing of suit for divorce in the Chancery Court of Knox County, and the information given was that abandonment was the major ground of divorce named in the petition. Counsel notified petitioner that his client desired to know what petitioner thought her requirements would be for her future maintenance. In the answer tendered with the petition, petitioner charged that the complainant was not a resident of Knox County, Tennessee. She denied that she abandoned the family or her children, denied that she refused to live with or communicate with the complainant, and denied that she had abandoned him as charged. She said further, in the answer, that she went to Washington to be near her son who was at the Walter Reed Hospital there, and that to help with the expense she took an apartment, without even a bedroom, and worked for 52 hours a week; that she

never refused to live with the complainant and that on the contrary the complainant lived with her in her apartment in Washington from November 1944 to March 1945; that the complainant has never been ordered back to Knoxville since June, 1940. The petitioner denies charges as to her personal conduct alleged in the bill and says that she conducted herself in a proper wifely manner. During the period that complainant was in Europe, she states that complainant did not write his son nor did he communicate with the defendant at all for six months prior to his return to this country, though he was in correspondence with some unnamed individual; that he was not confined at Walter Reed Hospital during the period he alleged he was when he charged that she would not visit him in the hospital, and stated that instead of being a war casualty he was merely a sufferer from sciatica, and instead of staying in the hospital he visited there only for treatment, staying in the meantime in her apartment.

She denied other material allegations of the bill and asked that the bill be dismissed.

The motion for leave to file this petition was opposed by the complainant, who filed a motion to dismiss the petition on the ground of failure of the petitioner to show sufficient merit and that the petitioner was estopped by her own gross negligence and wilful contempt to set up allegations in the petition as grounds to set aside the decree. Also that the affirmative relief sought was barred by gross laches, that there was no jurisdiction in the court to grant relief for the reason that the answer could not be allowed after an entry of the *pro confesso* and that the allegations of the petition as to the legal jurisdiction of the court contradicted the record in the case. Attached as Exhibit A to said motion was a copy of com-

plainant's counsel's letter to the petitioner heretofore mentioned, and attached as Exhibit B to said motion was a letter from the Washington counsel of petitioner, directed to the complainant himself, in which the said counsel informed the complainant that he would like to talk the matter over with him; that it was of sufficient importance to justify the complainant in making a trip there to obviate unnecessary expense, contact through the War Department, publicity and possible embarrassment to the parties; that in the event it should appear that a reconciliation was impossible it would be well to have the matter approached in an informal manner; that such a conference would be of advantage to everyone. In this letter counsel suggested that complainant come to Washington immediately and asked to be informed as to when he might expect complainant in his office. This letter was dated March 1st. So far as appears no response was made to that letter. Counsel for complainant, however, on March 25th, in a letter filed as Exhibit B to the motion, reiterated his request for an estimate as to petitioner's needs for future maintenance.

After consideration of the matter and arguments of counsel, the Chancellor sustained the complainant's motion to dismiss the petitioner's petition to vacate the final decree, on the ground of the gross laches of petitioner and her Washington attorney and because the petition and answer lacked requisite merit on their face, and because petitioner's petition and answer contradicted the record.

Petitioner has appealed from the action of the Chancellor in denying her petition to vacate the decree and allow her to file her answer.

As heretofore stated, this petition was filed within thirty days of the entry of the final decree and within the term, at a time when the court had absolute power over

such decree; when he could have, on motion of either of the parties or upon his own motion, altered, modified or set aside the decree *in toto*, or taken such other action as in his judgment might seem appropriate.

The brief of petitioner's counsel discussed fraud as a basis for setting aside the decree. Previous holdings of this court announce the doctrine that the defense of fraud may be set up only by demurrer, plea or motion to dismiss.

However, while the factual statements to sustain fraud were set up in the answer, which is not allowable generally, nevertheless, in view of the filing of the petition within the period during which this matter was in the bosom of the court and under its control, there was brought to the court's attention matters of fact which, if true, disclose that an imposition had been practiced on the court to secure a decree. These included allegations showing that there was no jurisdiction of the parties. We think that although the parties are the ones mainly concerned in the question of divorce, the State has a definite interest in the matter of domestic relations, including the matter of divorce, and that when it appears to the court, while the matter is still within the court's control, that it is possible, under charges made in a sworn answer, that the court is being imposed upon, it is the duty of the court to have the matter investigated and the charges sifted so that if such a fraud has been perpetrated, corrective action might be taken.

We think that the situation would have been otherwise had more than thirty days elapsed after the entry of the final decree, but in view of the fact that the situation was still in the control of the court, we think that for reasons of public policy it was desirable for the Chancellor to

224

have these matters of fact aired before the Court to see if the court was being imposed upon.

As to the gross laches, we do not agree with the learned Chancellor that gross laches existed in this connection. It is true that the petitioner had notice of the filing of the bill, but she did not have any information as to when an answer was due. She labored under the mistaken advice of her counsel that she did not have to do anything until papers were served upon her. In the meantime, however, correspondence was going on and it was disclosed to the court in connection with the petition and with the complainant's motion to dismiss the same, that the complainant felt an obligation to take care of the financial needs of the petitioner. Yet in the decree no provision was made with regard to this. This, taken by itself, disclosed that the decree was probably an incomplete decree and that it might be said, in excuse of the petitioner, that both parties expected such provision to be made. Further, Exhibit B to the motion to dismiss the petition disclosed that petitioner's counsel was endeavoring to get an opportunity to discuss this matter with the complainant in an effort possibly to obtain a reconciliation, and if not, to work out various matters that would properly be involved in litigation, and to avoid unpleasant matters. Under these circumstances we do not feel that the petitioner can be said to have been guilty of gross laches, either on her own part or on that of her counsel, particularly when a petition to set aside the decree was filed within thirty days of the entry of the decree, which was filed on the next day after the *pro confesso* was taken.

As to the ground for dismissing the petition because the petition and its accompanying answer contradict the record, we think that the petition and the

accompanying answer disclosed, if true, a meritorious defense to this suit and it would be expected naturally to contradict the record made in an *ex parte* proceeding. The case is different from one in which both parties have had their day in court.

While we think that the petitioner was guilty of some neglect in the matter, still we think that the ends of justice require, in view of the circumstances of this case and the fact that the petition was filed within the thirty day period, that the Chancellor should have allowed the petition and its accompanying answer to be filed and the case to be heard on its merits. Accordingly the action of the Chancellor in dismissing the petition to vacate the decree and to file the answer is reversed and the cause remanded for further proceedings consistent with this opinion.