VIRGINIA ALEXANDER DAUGHERTY, Complainant-Appellant, v. GORDON S. DIXON, Defendant-Appellee.—297 S. W. (2d) 944.

Eastern Section.  November 20, 1956.

Petition for Certiorari denied by Supreme Court February 8, 1957.

Lodge Evans, Elizabethton, for appellant.

Banks, Street & Banks and Dick L. Johnson, Elizabethton, for appellee.

HALE, J. The question: Can a divorced wife who subsequently marries another man enforce an award for monthly alimony against her former husband for the period following her remarriage?

On January 9, 1956, the complainant filed this action against her former husband to recover alimony of $35 per month from December, 1935, based upon a decree of divorce she obtained on May 23, 1935. (She originally also sought to recover $5,000 for reimbursement for the support she had rendered their minor child, Ann Dixon, who was 2 months of age at the time of the divorce, but this claim was eliminated by an amendment withdrawing it from her complaint.)

This decree of May 23, 1935, provided:

"2nd. That complainant have and recover of and from the defendant alimony in the sum of $35.00 per month, until further order of this Court, the first payment on June 22nd, 1935, or as soon as defendant receives his monthly pay check, and monthly thereafter."

On September 2, 1938, the complainant married her present husband, Ralph E. Daugherty, now a practicing attorney of Lakeland, Florida. He owns some valuable property by inheritance and has a comfortable income from this and his profession. The greater part of the time from the divorce the complainant has been employed herself, and evidently was of great help to her present husband.

Ann Dixon, child of the parties hereto, was supported by her mother and stepfather with comparatively little assistance from her father. She was married in 1951, and as pointed out there is now no claim for reimbursement for her support during her minority.

No steps were taken to enforce the provisions of the decree of 1935 until the filing of the bill in this cause, which was caused by the defendant inheriting some property.

The Chancellor dismissed the bill, citing this statement from 112 A. L. R. at pp. 246, 254:

"The duty of a divorced husband towards his former wife is to support her while she remains single or until she dies, and if she remarries again or dies that duty towards her will terminate. A good public policy will not compel a divorced husband to support his former wife after she has become another man's wife, except under extraordinary conditions which she would be required to prove."

He further held there were no equities to support complainant's claim; that she was guilty of laches; and that the judgment was barred by the ten year statute of limitation, T. C. A. sec. 28-310. Under the cross bill filed by defendant, he also held the defendant should be relieved from all liability for alimony, past, present or prospective.

Complainant has duly appealed and assigns many errors, some of which are repetitious and all of which are answered by the conclusions presently to be announced.

■ Beyond any doubt, the defendant would have been liable to the complainant for the awarded alimony from the time he stopped payment in December, 1935, until her remarriage in September, 1938, but this claim is so stale (Gibson's Suits in Chancery, sec. 81) and is barred by the ten year statute of limitation, supra, that it need not be considered further.

Likewise we might apply that same reasoning to that part of the alimony accruing up to ten years before the filing of the suit in this cause, but we prefer to meet directly the question of the authority of the court to terminate retroactively the award of alimony.

■ There is a considerable division of opinion on this question, with the trend of modern authority supporting the action taken.

Our statute, T. C. A. sec. 36-820 authorizes "an increase or decrease of" the allowance of alimony "on cause being shown". It is true that this does not specifically authorize retroactive action or complete cancellation. But our courts have held that in view of the humanitarian purposes involved the relief might be retroactive Crane v. Crane, 26 Tenn. App. 227, 170 S. W. (2d) 663, and Gossett v. Gossett, 34 Tenn. App. 654, 241 S. W. (2d) 934, from which it follows that the "decrease" might be so great as to make the allowance come within the de minimis rule. In short, it was the purpose of this beneficent statute to give the trial court such elasticity of action as was necessary to meet the equities of the case and as well take care of the interest of the State, which is a third party in interest in divorce cases.

In Schouler on Divorce, sec. 285, pp. 425-426, it is said:

"Where it is the wife who has remarried, the courts seem to be more inclined to allow a modification of the decree. There are in some states statutes requiring or permitting this to be done. Thus in New York it is provided that alimony provisions in a decree of divorce must be annulled on proof of the marriage of the wife after final judgment. Under such a statute, *or indeed without one,* the court may have power and usually will modify or vacate the decree except so far as the rights of children may be concerned." (Emphasis supplied.)

Indeed, there is respectable authority to the effect that remarriage of the wife automatically terminates the award of alimony. See Austad v. Austad, 2 Utah (2d) 49, 269 P. (2d) 284, 48 A. L. R. 256, at p. 278 et seq. But it is stated in paragraph 8 of the aforesaid annotation, which thoroughly treats every phase of this problem:

"While the principle is well established in most jurisdictions that a wife cannot, upon her remarriage, continue to receive alimony as of right from her former husband, since this would entitle the wife to be supported by two men and would be contrary to public policy, the question whether alimony ceases automatically upon the remarriage or whether it continues until the former husband properly petitions the court for termination or modification is one upon which, as has already been pointed out, the courts are not in unanimous agreement, although the disagreement may be one of terminology rather than substance. Assuming, however, that the remarriage of the wife does not operate ipso facto to terminate

the right to alimony, the question whether there may be retrospective modification of instalments of alimony which have accrued following the remarriage has been treated as one involving the court's power to thus act retrospectively.''

This rule is supported by many citations from jurisdictions and seems to be consonant with reason and justice. If we were to lay down the rule of automatic termination it is entirely possible that some later case might present a factual development that would require the writing of an exception to the rule, whereas if we adhere to the one quoted we may be sure that the rights of the parties may be fully protected.

In Gossett v. Gossett, 34 Tenn. App. 654, 241 S. W. (2d) 934, supra, the Western Section of this court, speaking through Judge Swepston, now Mr. Justice Swepston of the Supreme Court, held the Chancellor of his own volition had the power to grant relief from past due installment. It is true that this and the Crane case, supra, both involved adjudications for support of children, but we cannot see any difference between this and an award of alimony—both require the father and/or husband to do that which he should have done in the first instance.

See also annotation to 6 A. L. R. (2d) 1277 et seq., where there is another discussion of this question, including the effect of the Sistaire case mentioned in Crane v. Crane, supra, and whether the power to grant relief is inherent or is based upon statute, in the course of which it was said at page 1296:

''A husband sometimes seeks to cancel arrears of alimony on the ground that the wife remarried and

he ceased payment of alimony on the assumption that he was no longer liable for the payments and because the divorced wife no longer expected to receive alimony. This is the common sense reaction of a layman. On the other hand the general rule, in the absence of a contrary statutory provision, is that the remarriage of the wife does not automatically terminate or suspend the operation of the decree for alimony, although the remarriage furnishes a ground for modification (see 17 Am. Jur. 500, Divorce and Separation 657), and so the alimony payments continue to fall due after the marriage where the husband does not apply for a modification. The question then arises as to whether the court may cancel the arrears.

"Where the courts have the power to cancel arrears of alimony, it is obviously proper to cancel arrears which have accrued subsequently to the divorced wife's second marriage.".

In 17 Am. Jur., Divorce and Separation, sec. 610, p. 474 et seq,, it is said:

"The remarriage of a divorced wife does not, according to the weight of authority, ipso facto terminate the former husband's obligation to pay the alimony decreed. But, since alimony is allowed on the theory that it is for the support and maintenance of the divorced wife, her remarriage to one capable of furnishing her suitable support may, in the circumstances, constitute a strong ground for terminating the alimony or reducing the amount thereof. In some cases a stronger view has been taken. Thus, the view has been expressed that on the

remarriage of a divorced wife her right to alimony as against her first husband terminates, or that it would be difficult to suggest or conceive any cause that would present grounds more reasonable and proper for suspending further payment of alimony than the subsequent marriage of the divorced wife. Aside from positive unseemliness, it is illogical and unreasonable that she should have the equivalent of an obligation for support by way of alimony from a former husband and an obligation for a present husband for an adequate support at the same time. It is her privilege to abandon the provision made by decree of the court for her support under sanctions of the law for another provision for maintenance which she will obtain by a second marriage; and when she has done so, the law will require her to abide by her election since there is no reason why she should not do so. It may be noted that the decree of alimony sometimes expressly provides for the termination of payments upon the remarriage of the wife, such decree, in some of the cases, following and being founded upon an agreement of the parties in this respect. Similarly, the duration of allowance may depend upon specific agreements, such as an agreement made for the payment of alimony during the wife's life, or upon statutes as to the effect of remarriage.

"Where an allowance is decree to a divorced wife as a substitute for, or in lieu of, her rights in the husband's property, or in property acquired from her, it seems that the allowance is not affected by her remarriage."

But in pocket part cumulative section to this paragraph it is said:

"There is a marked conflict of authority as to whether the court has the power to cancel arrears which accrued before the filing of the petition for cancelation. In many jurisdictions the courts have the power to cancel all or part of the arrears which have become due under a decree for alimony, separate maintenance, or support prior to the filing of a petition to cancel. In other jurisdictions, the general rule subject to some exceptions, is that the courts do not have the power to cancel or reduce the amount of arrears under a decree for alimony, separate maintenance, or the support of a child, even though they may modify the decree with respect to payments to come due after the filing of a petition for modification or after the entry of the order thereon. Generally the decisions are made under some statutory provisions concerning the power of the court to modify a decree, and yet the courts rarely refer to the statute when deciding the question but dispose of it as though it were governed by the common law."

Regardless of the division of authority on this question, we think the sounder rule is to allow the court to grant relief from past due installments of alimony as was done in child support cases.

It is argued that as the defendant did not comply with the decree after December, 1935, he was, therefore, guilty of contempt of court and that his cross bill seeking a termination of the allowance should not have been entertained. There are two answers to that: (1) He had never been adjudged guilty of contempt, as was the case in

Clark v. Clark, 152 Tenn. 431, 278 S. W. 65, relied upon by appellant; and (2) Under the general authority as to the position of the defendant being the stronger, this remarriage might have been asserted as a defense to complainant's claim, although the sounder practice may have been for him to have sought affirmative relief in this particular.

What has been said makes it necessary to affirm the decree below at the cost of appellant and sureties on appeal bond.

Affirmed.

McAmis, P. J., and Howard, J., concur.