**Thelma McLemore BRAY (Bivens), Plaintiff-Appellant,**

v.

**Ronald E. BRAY, Defendant-Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 8, 1981.

Permission to Appeal Denied by Supreme Court Dec. 28, 1981.

Dale C. Workman, with Lockett, Slovis & Weaver, Knoxville, for plaintiff-appellant.

A. Benjamin Strand, Jr., with Strand & Goddard, Dandridge, for defendant-appellee.

OPINION

SANDERS, Judge.

The Plaintiff-Appellant, Thelma McLemore Bray Bivens, and the Defendant-Appellee, Ronald E. Bray, were divorced in the Circuit Court of Knox County in October, 1975. The Plaintiff was awarded a divorce on the grounds of cruel and inhuman treatment. Although the Defendant filed an answer, he did not contest the divorce and he and the Plaintiff reached a property settlement agreement together with an agreement as to the custody of their two children and their support before the divorce, which was approved and adopted by the court. They had two children, six and eight years of age. They were awarded to the Plaintiff with liberal visitation privileges by the Defendant.

The Defendant was laid off from work at the Aluminum Company of America and was drawing unemployment compensation at the time. He was ordered to pay the Plaintiff $35 per week as child support. It was agreed the Plaintiff would receive the residence and 1.7 acres of land as a property settlement agreement and the Defendant would pay off an existing mortgage of $3,000 on the property. The mortgage on the property which the Defendant agreed to pay was payable at the rate of $58.80 per month.

After the divorce the Defendant did not make any of the mortgage payments and

less than half of the child support payments. In September, 1980, Plaintiff filed a petition asking that the Defendant be held in contempt. She alleged the Defendant was more than $6,000 in arrears in child support and $3,000 in arrears on his mortgage payments. She also asked that the child support payments be increased from $35 to $50 per week.

In his answer the Defendant admitted he had not made any of the mortgage payments. He said that shortly after the divorce the Plaintiff moved out of the house and rented it for more than enough to make the mortgage payments. He denied he was in arrears with child support payments.

Upon the trial of the case the court held the Defendant should not be required to pay the arrearage on the mortgage or on the child support. He did, however, order the child support payments increased from $35 to $50 per week.

The Plaintiff has appealed, saying the court was in error in not requiring the Defendant to pay the arrearage on the mortgage and child support.

One of the Defendant's contentions for not paying the child support was that the children spent a great deal of time with his mother. His mother lived next door to the Plaintiff for a good period of time between the time of the divorce in October, 1975, and the date of the trial in December, 1980. The Plaintiff worked regularly during this period of time except in 1978 when she was laid off from work. While she was working she would take the children to Defendant's mother's home in the morning and they would wait there until the school bus picked them up. After school they would return to their grandmother's home and wait until the Plaintiff got off from work and picked them up. The Defendant was living with his mother a great deal of this time and their son would, on many occasions, spend the night, and sometimes several weeks, to be with the Defendant. Although the Defendant contended he spent considerable money on the children, the only thing he was specific about was that he bought them some clothing and paid for swimming lessons and sent them to camp. He did not itemize or even estimate these expenses.

The trial court, in addressing the question of arrearage of child support, said, "In this record, as far as the arrearage of child support is concerned in this record, there is no specific proof as the court finds of what the arrearage is. The mother insists that both children were not out of her home except on very sporadic and infrequent_/ and I think the proof would contradict that. . . . But in this record there seems to be enough question and, everything taken into consideration, I don't find that there is a reason to now tax this man with that back arrearage and require that he contribute to the mother those sums."

While we agree with the trial judge that the children had probably spent more time in the home of the grandmother than the Plaintiff indicated, we cannot agree with the court that there is no specific proof as to what the arrearage was. Between the date of the first trial in 1975 and the trial of this case in 1980 there was a lapse of approximately 274 weeks. The child support at the rate of $35 per week would total $9,590. The Plaintiff kept very good records of what the Defendant paid during this time, which show a total of $3,096. Although the Defendant claims the Plaintiff did not give him credit for all of his payments, he filed checks and receipts covering payments to her and they total $4,285. If we use the Plaintiff's figures there is an arrearage of $6,494 but if we use the Defendant's figures there is an arrearage of $5,305. The Defendant also introduced other checks in the amount of $1,180.37 which he claims were payments for the benefit of the children. But they could not be tied directly to benefits for the children. These checks were written to places of business such as Krogers, White Stores, TY&G, Food City, J. C. Penney, etc.

On the question of arrearage on the mortgage payments the court said: "It seems to me that the reasons that decree, which I would point out, was a consent decree and approved by the Court, not a decree that was instigated by the Court

after hearing. It would certainly appear to me, and if that decree had been made by the Court it would have been contemplated that the house would be given to the mother to provide a place for the children to live. That was given to her as alimony. I think it's logical to interpret that the payments that then were ordered to be paid on the mortgage would be in the form of alimony or it would certainly have been contemplated that that was additional financial help that the man was giving to the wife in order to help support the children. I think under the circumstances it's entirely proper and I hold that either as alimony and/or payments to help the wife, or the former wife, and children provide a home, that when she rented the property and chose to move out and to rent the property, and was able to rent the property for more than the rent (sic) was, that this man shouldn't be required to, at this point, reimburse her for those payments. And that portion of the petition is dismissed."

■ In considering the holding of the court that he would consider the payments on the mortgage to be alimony or payments to the wife to help the children, we think we need to look to the intention of the parties at the time they made the property settlement agreement. If it was a part of the property settlement agreement between the parties that Plaintiff was to have the home and the Defendant would pay off the mortgage, the court is without authority to forgive this indebtedness. If the commitment of the Defendant to pay the mortgage was unconditional and it was alimony *in solido*, the court is without authority to forgive it. *Zeitlin v. Zeitlin*, Tenn.App., 544 S.W.2d 103 (1976). If it was part of the child support, the court may forgive all or any part of it within his discretion. If it was alimony *in futuro*, the Defendant was obligated to make the payments even though the Plaintiff remarried in January, 1977, since the Defendant failed to ask to be relieved from the payments. However, the court may, in its discretion, relieve the Defendant from such payments under the holding in *Daugherty v. Dixon*, 41 Tenn. App. 623, 297 S.W.2d 944 (1956). Alimony

payments do not *ipso facto* terminate upon the remarriage of the wife and if the husband desires to be relieved from such payments he should file a petition seeking such relief. The courts may grant such relief retrospectively.

There is no evidence in the record that the agreement between the parties was ever reduced to writing nor was the testimony of the parties enlightening on their intentions. The Defendant testified the reason he wanted the Plaintiff to have the home was so the children would have a place to stay. From reading the complaint in the original case together with the answer and provisions of the judgment, we think it quite apparent that the parties had reached their agreement before the complaint was ever filed. In her complaint the Plaintiff alleges they owned a 2.5-acre tract of land and on the opposite side of the road a 5.5-acre tract of land on which their home was located and which the Defendant considered to be worth $70,000. The Plaintiff asked for the home and 1.8 acres of land upon which it is located, which is encumbered to the extent of approximately $3,000 payable at $58.80 per month. She says, "Plaintiff is not asking for any money alimony for herself since she is working, but does ask that the Defendant be required to contribute to the support of the two children and make the payments on the home and the automobile." In the prayer of the bill, after asking for custody of the children in paragraph 3 and support in paragraph 4, she says, "That plaintiff be awarded the home and 1.8 acres of land upon which the house is situated, together with the household furniture, furnishings and appliances, as a property settlement, and defendant be required to make the monthly payments on said property until it is fully paid for so that plaintiff and the children will have a home free and clear of encumbrances."

In his answer the Defendant said, "He admits that he and the Plaintiff have reached an agreement with respect to the custody of the two children and child support and *property settlement*." (Emphasis ours.)

Although the judgment refers to the parties as having reached an agreement as "to custody of the children, alimony and support," in making the award of the property to the Plaintiff it refers to it as "a property settlement." The judgment also provides: "In addition thereto the defendant is ordered and directed to make, execute and deliver to the plaintiff a deed conveying to her all of his right, title, interest and equity in said property. The property is encumbered to the extent of $3,000, and by agreement of the parties *the defendant is ordered and directed to make the monthly payments on said home until the indebtedness against said home is fully liquidated."* (Emphasis ours.) And: "The awarding of the home and the acreage to the plaintiff is in full, final and complete settlement of all of her marital rights, and she hereby waives and relinquishes any further claims to any other of the properties of the defendant." The Plaintiff and the Defendant each personally signed the judgment, apparently to signify their agreement to its terms.

Our courts have had occasion to deal with the issue of determining whether future payments were to be considered alimony *in futuro* or *in solido* in three relatively recent cases. Each case was decided on the facts peculiar to the particular case. In the case of *Prince v. Prince,* Tenn., 572 S.W.2d 908 (1978) our Supreme Court held that an unconditional agreement to pay insurance premiums in the future was alimony *in solido.* In addressing the question, the Court said, at page 912:

"We do not find precedents to be of controlling value in the case, however, since the issue is primarily one of fact and of the intention of the parties."

In the case of *Spalding v. Spalding,* Tenn. App., 597 S.W.2d 739 (1980) the court held that a decree of alimony which provided the husband would pay the wife $2,000 per month alimony for 108 months or nine years was alimony *in solido* and not *in futuro.* The court quoted with approval, at page 741, as follows:

"Alimony in gross, or 'lump-sum alimony,' is fundamentally the award of a defi-

nite sum of money; and if the sum is payable in instalments the payments run for a definite length of time. The sum is payable in full, regardless of future events such as the death of the husband or the remarriage of the wife. Gross alimony becomes a vested right from the date of the rendition of the judgment, and the manner of its payments in no wise affects its nature or effect. The fact that the award is payable in instalments is not determinative of the question whether it is gross alimony or periodic alimony. 24 Am.Jur.2d Divorce and Separation § 614 (1966) (footnotes omitted)."

The court further said:

"Clearly, if the alimony awarded respondent is periodic alimony, the trial court may modify the award, T.C.A. § 36–820; *see Zeitlin v. Zeitlin,* 544 S.W.2d 103, 109 (Tenn.App.1976); however, if the alimony awarded is *in solido,* the trial court cannot modify the award after the expiration of thirty days. *See Bauer v. Bauer,* 184 Tenn. 217, 197 S.W.2d 892 (1946); *Pendergrass v. Pendergrass,* 56 Tenn.App. 227, 405 S.W.2d 666 (1966)."

In the most recent case of *Phillips v. Webster,* Tenn.App., 611 S.W.2d 591 (1980) the decree incorporated a separation and support agreement in which the husband agreed to pay the wife $100,000, to be paid in quarterly installments of $2,500 over a 10-year period. The court held this to be alimony *in solido.*

Based on the authority of the cases set out above, we conclude that we would probably be justified in holding, under the facts in the case at bar, that the agreement of the Defendant to "make the monthly payments on said house until the indebtedness against said home is fully liquidated" was either a part of the property settlement or alimony *in solido* but, in view of our determination of the equities in this case, we do not deem it necessary and it is pretermitted.

At the time the divorce was granted the Defendant was laid off from work and was

drawing unemployment benefits. He returned to work in 1976 and his income for that year was $7,000. In 1977 his income was $15,000 and in 1978 and 1979 it was $17,000 each year. There was no contention on the Defendant's part that he was unable to make these payments. However, the Plaintiff's records show he paid the Plaintiff nothing between the date of the divorce on October 3, 1975, and March 19, 1976. The Plaintiff testified the reason she moved out of the house and rented it was because she could not otherwise make the payments on it. Although the Defendant had an income of $15,000 in 1977 and $17,000 in 1978, the Plaintiff's records show that the Defendant paid her nothing between February 23, 1977, and January 4, 1979. The proof shows the final payment on the mortgage was due in December, 1980. Although the principal balance due on the mortgage was $3,000 at the time the judgment was entered, had the Defendant made the monthly payments, it would have taken 62 payments of $58.80 each, which amount to $3,645.60. This arrearage added to the $5,305 due on child support makes a total of $8,950.60 which the Defendant would owe the Plaintiff.

◼ We fail to find any equities in this record which would justify the forgiveness of all of this indebtedness. If the court found the mortgage payments to be alimony *in futuro* he would be justified in forgiving that amount. Had the trial court ordered the Defendant to pay the arrearage in full, we would affirm, but since he forgave the arrearage, we feel constrained to yield somewhat in favor of his holding although we think he abused his discretion in forgiving the entire amount. We accordingly modify the decree by reinstating the amount of $5,000.

The issues are found in favor of the Appellee. The judgment of the trial court is modified to award a judgment in favor of the Plaintiff for $5,000. To the extent the court's judgment is not modified, it is affirmed. The case is remanded to the trial court for the entry of a judgment in keeping with this opinion and supervision of its

payment. The cost of this appeal is taxed to the Appellee.

GODDARD and FRANKS, JJ., concur.