B. Stewart Jenkins, Jenkins & Grantham, Chattanooga, for appellant.

Barbara Ann Rogers, pro se.

**Barbara Ann ROGERS, Appellee,**

v.

**Walter Ansel ROGERS, Appellant.**

Supreme Court of Tennessee, at Knoxville.

Sept. 10, 1990.

OPINION

COOPER, Justice.

We granted permission to appeal to consider whether a wife's right to continued payments of alimony *in futuro* by her former husband is terminated by her remarriage, absent a statement to that effect in the decree of divorce.

Barbara Ann Rogers was granted a decree of divorce from Walter Ansel Rogers on September 11, 1975. Mr. Rogers, the appellant, was ordered "to pay as periodic alimony, fifty ($50.00) dollars per week for the support and maintenance of [appellee] ... until further orders issue from [the Circuit Court of Hamilton County]." On June 14, 1985, appellee married a second time. She divorced her second husband, Gerstole Dye, on December 4, 1985. Shortly after the second divorce, Lavoy Smitherman moved in with appellee. Appellant

continued to pay alimony through February, 1987.

Mrs. Rogers filed a petition charging that appellant had willfully refused to make alimony payments as ordered in the 1975 decree of divorce. Appellant, in turn, sought court termination of any obligation to pay alimony to appellee, and also sought to recover the $4,250.00 in alimony paid after the date of the second marriage of Mrs. Rogers.

Noting that a second marriage does not automatically terminate the alimony payments, absent an express provision in the decree of divorce, the trial court did not terminate the alimony obligation, but reduced the alimony to be paid appellee from $50.00 per week to $25.00 per week retroactive to December, 1985, when Mr. Smitherman moved into Mrs. Rogers' home. The Court of Appeals affirmed.

We have no quarrel with the basic holding of the lower courts, that is, that a second marriage by the recipient, does not automatically terminate payments of periodic alimony. The statute in effect at the time of entry of the 1975 divorce decree, T.C.A. § 36–820, granted authority to the trial court to:

> ... make an order and decree for the suitable support and maintenance of the complainant ..., according to the nature of the case and the circumstance of the parties, the order or decree to remain in the court's control; and, on application of either party, the court may decree an increase or decrease of such allowance on cause being shown.

A purpose of T.C.A. § 36–820, as quoted above, was to give the trial court the elasticity of action necessary to meet the equities of the case. Having given authority to the trial court to act as circumstances dictate, no provision was made in the statute for automatic termination of the obligation to pay alimony on the marriage of the party receiving payment.

In two reported cases, the Court of Appeals rejected the position that a subsequent marriage automatically terminates the obligation to pay periodic alimony. *See Bray v. Bray,* 631 S.W.2d 136 (Tenn.App.

1981); *Daugherty v. Dixon,* 41 Tenn.App. 623, 297 S.W.2d 944 (1956). In doing so, the court explained in *Daugherty v. Dixon, supra,* that:

> If we were to lay down the rule of automatic termination it is entirely possible that some later case might present a factual development that would require the writing of an exception to the rule, whereas if we adhere to the one quoted we may be sure that the rights of the parties may be fully protected. 297 S.W.2d at 946.

And, in *Bray v. Bray, supra,* the court reiterated that:

> Alimony payments do not *ipso facto* terminate upon the remarriage of the wife and if the husband desires to be relieved from such payments he should file a petition seeking such relief. The courts may grant such relief retrospectively. 631 S.W.2d at 138.

Other courts have arrived at the same conclusion. *See, In re Marriage of Shima,* 360 N.W.2d 827 (Iowa 1985); *Grove,* 280 Or. 341, 571 P.2d 477 (1977); *Beck v. Beck,* 208 Kan. 148, 490 P.2d 628 (1971); *Bubar v. Plant,* 141 Me. 407, 44 A.2d 732 (1945); Anno. Alimony—Effect of Remarriage, 48 A.L.R.2d 270, (1956). Most of the courts holding a subsequent marriage by the recipient of alimony *in futuro* does not automatically terminate the alimony obligation, hold that it does create a presumption that the court end the alimony payments *unless the recipient can show some extraordinary circumstance justifying its continuance.* We agree with the rule announced. It is in keeping with the strong public policy against requiring a former husband having to support his former wife after she has married another; yet, it does not take authority from the trier of fact to find that extraordinary circumstances exist justifying the continuance of alimony payments.

The paucity of cases that have reached this Court on the effect of a second marriage on a court imposed obligation to make periodic payments of alimony leads us to believe that the trial courts, in fact, have followed the rule. But to insure that this is the case, we expressly hold that

while the obligation to make periodic payments of alimony does not *ipso facto* terminate upon the remarriage of the party receiving the payments, the marriage does create a presumption that there is no basis, in equity, for alimony to continue and that it should end retroactively to the date of the marriage. The presumption is rebuttable upon a showing by the person receiving alimony payments of some extraordinary circumstance justifying its continuance.

We find nothing in the record in this case to indicate that the issue of alimony was tried or considered under the complete rule announced above. To insure that the parties have their day in court on the issue, the judgment of the trial court, affirmed by the Court of Appeals, is set aside and the case is remanded to the trial court for trial. Costs incident to the appeal are adjudged against both parties.

DROWOTA, C.J., and FONES, O'BRIEN and DAUGHTREY, JJ., concur.