Dorris White BUTCHER,
Plaintiff–Appellant,

v.

Betty Jean Lane Butcher WEBB,
Defendant–Appellee.

Supreme Court of Tennessee,
at Nashville.

Jan. 10, 1994.

Thomas L. Reed, Jr., Murfreesboro, for appellant.

Ken Burger, Murfreesboro, for appellee.

## OPINION

O'BRIEN, Justice.

This is an action to recover alimony payments claimed to have been improvidently paid by the plaintiff as a result of the defendant's intentional and deliberate concealment of remarriage.

Dorris White Butcher and Betty Jean Lane Butcher were granted an absolute divorce in Rutherford County, Tennessee on 24 August 1976. The divorce decree ordered ex-husband, Dorris Butcher, to pay alimony at the rate of $40 per week. The decree did not contain limitation on the number of payments, nor did it include a provision for the cessation of alimony upon remarriage of the recipient ex-spouse.

In compliance with the divorce decree, Dorris Butcher made bi-monthly deposits of $80 into his ex-wife's bank account. Shortly after the divorce, Betty Jean moved to Sumner County. On 7 February 1982 she married a Davidson County man in Davidson County and became Betty Jean Lane Butcher Webb. She did not disclose her remarriage to her ex-husband. Unaware of Betty Jean's remarriage, Dorris Butcher continued to make the bi-monthly deposits of alimony. He stopped making the deposits only when he discovered his ex-wife's remarriage shortly before he filed this action on 19 January 1990 to terminate the court ordered alimony and recover past payments.

After her remarriage, Betty Jean began using her new married name, Webb. However, she continued to maintain many of her business and personal records in the name of

Butcher, apparently including the bank account where the plaintiff deposited the alimony checks. Testimony indicated at least one of the parties' children was unaware of Betty Jean's remarriage and that in 1984 Betty Jean signed an authorization of marriage for a minor child as Betty Butcher. Further, a birth announcement printed by a local newspaper in July of 1989 listed her name as Betty Butcher.

Betty Jean's testimony indicated that she thought Dorris Butcher may have known of her remarriage. However, she stated that she never told him and he never inquired about her marital status. There was conflicting testimony at trial whether she visited the convenience store where her ex-husband was employed and whether she wore her wedding ring on those occasions. Mrs. Webb did not, however, wear her wedding ring on the date of her deposition in this cause or on the date of the trial, 31 January 1991.

The trial court found that, although there was never any direct denial of her remarriage, it appeared that Betty Jean did take action to prevent the fact of her remarriage from casual discovery by Dorris Butcher. The trial court further found that Dorris Butcher acted reasonably in efforts to learn of Betty Jean's remarriage and that she conducted her business in such a manner that it was virtually impossible for petitioner to learn of it.

The trial court also found that Betty Jean deposed that she generally knew that alimony payments might cease when the recipient ex-spouse remarried, but that she relied on an alleged oral promise by Dorris Butcher, made shortly after the divorce became final, to support her for life. Dorris Butcher denies making the promise. An inordinate amount of trial time was spent on the proof of the events leading up to the alleged promise of support. We decline to take the time to discuss it here because, implicit in this State's divorce statutes, parties are bound by the court's divorce decree and cannot take it upon themselves to modify their obligations under that decree.

The trial court's judgment ordered the cessation of alimony payments and the retroactive recovery of all sums paid by Dorris Butcher, computed from the date of Betty Jean's remarriage, amounting to some $16,640. Mrs. Webb appealed that judgment.

The Court of Appeals found nothing in the record to show that the ex-wife made a conscious effort to conceal the fact of her remarriage from her former husband. They held that the trial court had abused its discretion in awarding judgment against Mrs. Webb for all the alimony payments she had received from the date of her remarriage. The Court of Appeals reversed the money judgment but affirmed the termination of alimony payments from and after the date of the filing of Mr. Butcher's petition. Mr. Butcher has in turn appealed to this Court.

■ In Tennessee, a court ordered obligation to make periodic payments of alimony does not automatically terminate upon the remarriage of the recipient ex-spouse. *Daugherty v. Dixon,* 41 Tenn.App. 623, 297 S.W.2d 944 (1956). Remarriage of the recipient spouse does, however, create a presumption that there is no basis for the continuation of alimony payments. In *Rogers v. Rogers,* 795 S.W.2d 667, 668 (Tenn.1990), this Court noted:

> Other courts have arrived at the same conclusion. (Citations omitted). Most of the courts holding a subsequent marriage by the recipient of alimony *in futuro* does not automatically terminate the alimony obligation, hold that it does create a presumption that the court end the alimony payments *unless the recipient can show some extraordinary circumstances justifying its continuance.* We agree with the rule announced. It is in keeping with the strong public policy against requiring a former husband having to support his former wife after she has married another; yet it does not take authority from the trier of fact to find that extraordinary circumstances exist justifying the continuance of alimony payments.

The paucity of cases that have reached this Court on the effect of a second marriage on court imposed obligation to make periodic payments of alimony leads us to believe that the trial courts, in fact, have followed the rule. But to insure that this

is the case, we expressly hold that while the obligation to make periodic payments of alimony does not *ipso facto* terminate upon the remarriage of the party receiving payments, the marriage does create a presumption that there is no basis, in equity, for alimony to continue and that it should end retroactively to the date of the [re-]marriage. The presumption is rebuttable upon a showing by the person receiving alimony payments of some extraordinary circumstance justifying its continuance. (emphasis in original text).

The issue here, however, is not whether accrued alimony payments may be terminated or retroactively modified to the date of remarriage of the recipient ex-spouse. The parties in this case agreed to terminate alimony payments at the time the petition to terminate was filed. Instead, the issue is whether sums of alimony already paid may be ordered returned to the obligor ex-spouse.

The determination of this issue must necessarily rest on the duty or, as in this State, the lack of such duty, requiring the recipient ex-spouse to notify the obligor ex-spouse of remarriage. In Tennessee, there is no authority, either statutory or common law, which imposes an affirmative duty on the part of a recipient of alimony to notify the paying former spouse of remarriage. Unless, of course, such a condition is specifically required by the divorce decree or the marital dissolution agreement. In the absence of an affirmative duty to notify the payor ex-spouse of remarriage, mere nondisclosure by the recipient ex-spouse cannot be considered actionable. Dorris Butcher never made inquiry as to Betty Jean's marital status and Betty Jean never volunteered the information. Although Mrs. Webb may have concealed the fact of her remarriage, without an affirmative duty to notify an ex-spouse of remarriage, her actions do not rise to the level of fraud.

For the foregoing reasons, the judgment of the trial court terminating the payment of future alimony is affirmed. The sum of previously paid alimony ordered returned to the plaintiff, Dorris Butcher, is reversed. The cause is remanded for proceedings not inconsistent with this opinion. Costs are divided equally between the parties.

REID, C.J., and DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.