In re Petition to Adopt GLENDA SUE CLEMENTS

(*Knoxville,* September Term, 1956)

Opinion filed December 7, 1956.

ATCHLEY & ATCHLEY and HARGRAVES & HARGRAVES, Chattanooga, for Gladys Dean Clements.

DIETZEN, GRAHAM, DIETZEN & BROCK, Chattanooga, for Claudius A. Clements.

BESS BLAKE, Nashville, for State Welfare Department, appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This case comes to this Court on direct appeal from the Chancery Court of Hamilton County from a decree dismissing an adoption petition and sustaining an intervening petition of the Department of Public Welfare.

On October 28, 1954, a petition to adopt the child in question was filed by Dr. and Mrs. Clements with the consent of the natural mother which consent was heard and approved by the Chancellor. According to the petition Dr. & Mrs. Clements acquired the custody of the child on March 18, 1954 and at that time she was five

years of age having been born on August 25, 1949. On October 28, 1954 (day on which the natural mother's consent was signed and approved by the Chancellor), an order of reference was made to the Tennessee Department of Public Welfare, Child Welfare Division, and said Department was ordered, pursuant to Code Section 36-118, to make proper investigation and report to the court bearing on the adoption of this child by these parties.

On November 30, 1954, the Department of Welfare requested and was granted permission for an extension of time in which to make their investigation. On January 6, 1955, the Department filed a preliminary report and supplemental statement with the court. On August 24, 1955, the original solicitor for these petitioners was allowed to withdraw as a petitioner and relieved of his duties and obligations thereunder. On September 2, 1955, an order was entered dismissing the adoption proceedings filed on behalf of Claude A. Clements, the husband of Gladys Stewart Clements, the original parties who sought the adoption of this child. This request to be dismissed and to be relieved from any further effort to adopt this child was apparently made in open court and certain information in relation to the status of the parties who sought the adoption was then apparently known to or made known to the court. Among the other things the fact that these parties had then separated and divorce was pending. In their domestic difficulties the wife had shot at the husband once or more, one of the shots shooting the pocketbook out of his hip pocket.

On September 29, 1955, Mrs. Clements filed a supplemental petition in which she alleged that there was a contract agreement between her former husband and

herself to adopt this child and that this child was the beneficiary of this contract and that Dr. Clements should not be excused from its obligation and she asked that he be reinstated in the cause because the child was entitled to certain benefits by reason of the obligation which he therefore assumed in seeking the adoption. She also sought the custody of this child for herself.

On December 1, 1955, the Department of Public Welfare filed an intervening petition in the cause in which it alleged, due to the illness of Mrs. Clements and other confidential information which had been submitted to the court and to the domestic difficulties between these parties, that they would like to make further investigation and that the adoption should not be approved by the court because under the circumstances such was not for the best interest of the child. A supplemental report was filed by the Department of Public Welfare with the court and on December 8, 1955, Mrs. Clements filed an answer to this intervening petition in which she made a general denial of its allegations but she did admit that the divorce proceedings were pending and among other denials she denied that the Department had the right to place the child for adoption and consent to the adoption in *loco parentis*.

On March 13, 1956, the Department of Public Welfare moved that an order be made allowing Mrs. Clements 30 days to file a brief—Mrs. Clements' counsel was in court at the time this order was made. It was stated in this motion that no interlocutory decree had been entered in the cause as required by the Code, sec. 36-119, T.C.A. In that order Mrs. Clements was allowed 30 days from the date of the order to file brief showing cause if she could or legal authority if any that she could find for the court

to further entertain her petition for adoption and why said petition for adoption should not be dismissed. It thus appears that Mrs. Clements was given full and ample notice, she through her counsel did have such a notice and they duly answered such petition of and pursuant to Code Section 36-123, T.C.A.

On May 14, 1956, the final decree was entered sustaining the intervening petition of the Department of Public Welfare and dismissing the petition for adoption and it was from this order that this appeal was perfected.

Section 36-123, T.C.A., provides among other things that:

"If at any time between the filing of a petition and the issuance of the final order completing the adoption it is made known to the court that circumstances are such that the child should not be given in adoption to the petitioners, the court may dismiss the proceedings."

In the next succeeding paragraph provision is made that at least five days' notice must be given the parties and then in the following paragraph it is provided that if the child is not given to the petitioners that then the child will revert to the Department, etc.

In this case it clearly appears from the transcript of the record that ample and sufficient and legal notice was given to the petitioners; that the Department of Public Welfare would seek the custody of this child and would ask the court that the adoption petition not be approved. Mrs. Clements had ample notice of this and in view of the facts and circumstances made known to the court of the domestic difficulties between these parties we think clearly that the court cannot be said to have violated or

abused his duties and discretion in these proceedings of denying the petitioners the right of adoption. As we said in *Smith v. Smith,* 188 Tenn. 430, 220 S.W.2d 627, 629, the universal rule is that in such cases the court shall consider the welfare of the child. The language we used in the decision referred to is:

"In other words, in all of these custody or adoption cases involving small children, the rights of the parties, adult parties that is, applying for the custody of these children, must be relegated to the background and subordinated to what is considered for the best interest of the child."

Under this record there were many opportunities for the petitioner to be heard in this case. The original petition to adopt was filed in October, 1954, and was not dismissed until over 18 months thereafter to wit: on May 14, 1956. The petition of the Department of Public Welfare was filed on December 1, 1955, or some six months prior to the dismissal.

■ We think clearly that under the facts of this case the court exercised the proper discretion in denying this adoption, the welfare of the child being the paramount issue.

■ Section 36-119, T.C.A., provides that after the Department of Public Welfare has made their report as required by Section 36-118, T.C.A., the court may enter an interlocutory decree giving the care and custody of the child which is sought to be adopted to the petitioners. The obvious purpose of this interlocutory decree as contained in this section of the Code with separate listings of what the decree must contain are among other things so that the child may be put with these parties to see

whether or not things will work out for the child—a kind of a trial period, and preliminarily adjudicating everything essential to make the final adoption if the investigation and final proof is in accord. Code Section 36-119 provides that:

"Such interlocutory decree must be issued within six (6) months of the filing of the petition unless a final order is entered as provided in sec. 36-124, giving all the information hereinafter required."

This interlocutory decree was never entered herein. It thus must be assumed that the Clements were not in a position to fulfill the requirements of Section 36-119 as contained in the a, b, c, etc., of said Code Section. Clearly this is a mandatory provision of the decree and under the law as it has been written for a long time such an adoption proceeding must be construed strictly. *Baskette v. Streight,* 106 Tenn. 549, 62 S.W. 142, and *In re Knott,* 138 Tenn. 349-353, 197 S.W. 1097.

It is next very seriously contended and ably argued that the petition to adopt was erroneously dismissed as to Dr. Clements since there was a contract to adopt, the breach of which was financially injurious to the adopted child. We have no Tennessee cases on the subject. The cases though as a rule which arise in reference to this question are "in practically all the cases, the question of the validity of the contract has been raised after the death of the foster parent in an action to enforce property claims against his estate." 1 Am. Jur., p. 631, Sec. 20. It is also stated in 2 C.J.S., Adoption of Children, sec. 29, p. 405, that:

"An action will lie for damages resulting from a breach of contract for adoption. The measure of dam-

ages for breach of such a contract is not the value of the share of the promisor's estate which would have been inherited by the child, but the value of the services performed or outlay incurred on the strength of the promise, with interest.''

 We think that if there had been a contract to adopt such would not and should not be enforced in the courts of this State. Under statutes adoption can be accomplished only by court order, after following the various procedures set out in the different sections of the Code (36-101, and 36-137, T.C.A., under the title of Domestic Relations in the Tennessee Code Annotated), which statute must be strictly construed, *In re Knott, supra,* and thus we would think that if there had been a contract which this record shows nothing about it should not be enforced. Clearly here there is no contract to be enforced. Section 36-120, T.C.A., among other things provides that:

''Until the final order is made, the child shall be a ward of the court having jurisdiction. The petitioning adopting parents, however, shall act as guardian *ad litem* or next friend of the child in any suit for injuries done by a third party to the child while the child is in the care and custody of the said petitioning parents.''

This provision as well as others that might be found in the Code clearly show that until the court has finally adjudicated that the petitioners for adoption are suitable ones and that it is for the best interest of the child to be placed with them for adoption that no legal rights attach to either of the parties until said adoptive statutes are carried out. We in effect approved this principle when this Court in *Coonradt v. Sailors,* 186 Tenn. 294, 209 S.W.2d 859, 861, 2 A.L.R.2d 880, said:

"By the great weight of authority, the adoption of a child is governed by statute and to effect a legal adoption it must be strictly complied with."

The Court of Appeals in *Couch v. Couch*, 35 Tenn. App. 464, 248 S.W.2d 327, in a case in which we denied *certiorari*, held that there is no statute in this State which authorizes a party or parties to adopt a child by a mere private declaration or contract, and in the absence of such a statute, it cannot be done, because to allow it would be contrary to public policy of the State as declared by the statutes of descent and distribution, which include the adoption statute above referred to.

We feel that clearly the court has acted properly in this case and has done what is for the manifest best interest of the child involved. For the reasons above stated the decree of the Chancellor is affirmed at the cost of the appellant.