Linda K. Wilson HOYLE,
Petitioner–Appellee,

v.

Roy Rogers WILSON,
Respondent–Appellant.

Supreme Court of Tennessee,
at Nashville.

Jan. 19, 1988.
Rehearing Denied Feb. 22, 1988.

Mike W. Binkley, Nashville, for respondent-appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Robert Conley, Asst. Atty. Gen., Kathryn G. Griffin, Asst. Dist. Atty. Gen., Nashville, for petitioner-appellee.

## OPINION

DROWOTA, Justice.

An issue of first impression in Tennessee is presented by this case. Application for Permission to Appeal was granted by this Court to resolve important questions of law

and policy. Petitioner, Linda K. Wilson Hoyle, brought this action under the Uniform Reciprocal Enforcement of Support Act (URESA), T.C.A. §§ 36–5–201, *et seq.*, against Respondent, Roy R. Wilson. The issue concerns the scope of jurisdiction available to a trial court in URESA proceedings when that court retains continuing jurisdiction over the underlying support obligation upon which the URESA action is premised.

### I.

Petitioner and Respondent were married on August 5, 1966. During their marriage, the parties had two children, both boys; the older was born on June 8, 1967, and the younger on August 3, 1973. On December 5, 1978, the parties were divorced in the Circuit Court of Davidson County, Tennessee. The Respondent was ordered to pay child support in the amount of $60 per week until the children reached majority. Visitation rights were also afforded Respondent. Regardless, in 1981, without informing Respondent, Petitioner moved to Virginia with the parties' two sons. During the period from 1978 to 1982, Respondent had numerous difficulties exercising his visitation rights and was forced to resort to filing several petitions in the Davidson County Court to enforce these rights; the last such petition was in May, 1982, after which the trial court ordered that Petitioner permit his two sons to visit with Respondent from July 10 to August 28, 1982. This order was entered on July 9, 1982. Respondent sent Petitioner the money to cover air fare from Norfolk, Virginia, to Nashville, Tennessee,[1] and on the day the children were to arrive, he went to the airport to meet them; they did not, however, arrive on the scheduled flight. He then tried to contact Petitioner in Virginia but had no success. Subsequently, he lost all contact with Petitioner and his two children. In July, 1982, he ceased making support payments and at that time, as a result of an agreement with Petitioner, he owed a small arrearage of $240.

---

1. The Order provided that this amount be deducted from the support payments. Otherwise, support payments were to continue as ordered.

Two years later, in July, 1984, an Oklahoma District Attorney contacted Respondent regarding recommencing support payments. In August, 1984, he immediately began paying support and has continued to do so since that time. Between July, 1982, and July, 1984, however, an arrearage of $6,540 had accrued in addition to the $240 previously due and outstanding. He learned for the first time in two years where his ex-wife and their two children were when he was contacted by this Oklahoma District Attorney. On April 16, 1985, Petitioner filed an initiating URESA Petition in the District Court of Payne County, Oklahoma, to enforce payment of the arrearage—almost three years after she had disappeared. The Petition recited the respective dates of the parties' marriage and divorce and stated that Petitioner lived in Stillwater, Oklahoma. The Petition was received and filed in the Circuit Court of Davidson County on April 22, 1985. An Order to Appear and Show Cause was entered on April 24, 1985.

On June 14, 1985, Respondent filed an Answer and Counter-Petition, asserting certain affirmative defenses and petitioning for a reduction in the amount of support because the oldest child had reached majority on June 8, 1985. The Answer admitted many of the allegations of the Petition but raised equitable defenses based on the denial of his visitation rights, Petitioner's failure to comply with Court orders, and Respondent's loss of contact with Petitioner and their children. Respondent alleged that Petitioner was estopped by her contempt and by laches from enforcing Respondent's support obligation. A prayer for a reduction in the amount of support and for general relief was made by Respondent. By the Davidson County District Attorney's Office, Petitioner filed her Answer to the Counter-Petition on June 28, 1985.

A hearing was held in the Circuit Court of Davidson County on October 3, 1985. Petitioner was represented by the Davidson County District Attorney's Office. The only person to testify was Respondent. He was 38 years old at the time of the hearing and had remarried since his divorce from Petitioner. Both he and his present wife are employed and they have one child by this marriage. Respondent recounted the difficulties he had experienced with Petitioner concerning visitation and his loss of contact with her between July, 1982, and July, 1984. He testified that the reason he had discontinued making support payments was that he had lost all contact with Petitioner and his children. As soon as he discovered where they were, he resumed making payments. He now sends the support payments through the Oklahoma Department of Human Services. He last saw his two sons at Christmas in 1981. Although he contacted Petitioner's parents to find out where she was, they would not help him locate her. Following her disappearance in July, 1982, Petitioner never contacted him and he was never informed that she had moved from Virginia to Oklahoma.

On October 17, 1985, the trial court entered its Order, requiring Respondent to pay the $240 arrearage but forgiving the arrearage of $6,540 that accumulated during the period from July, 1982, through July, 1984. The trial court refused to enforce this arrearage "based upon the Petitioner's willful violation and willful contempt of the Davidson County Court Order entered in the Fifth Circuit Court ... on the 9th day of July, 1982 ... wherein the Respondent was to have child visitation privileges with the parties' minor children from July 10, 1982 through August 28, 1982...." The trial court also reduced the amount of support from $60 to $50 per week because the oldest child had reached majority. Following denial of a Motion to Alter or Amend the Judgment, Petitioner filed her Notice of Appeal.

The Court of Appeals reversed the trial court's Order and remanded for entry of a judgment for the arrearage. The Middle Section held that the trial court had no jurisdiction in a URESA proceeding to forgive a support arrearage on the basis of the Petitioner's contempt of a visitation order. Moreover, the Court of Appeals ruled that, assuming the trial court had jurisdiction, forgiveness of arrearages in

child support payments was contrary to Tennessee law. Respondent has appealed to this Court from this decision; we now reverse the Court of Appeals and reinstate the judgment of the trial court.

## II.

■ The purpose served by URESA is to facilitate enforcement and collection of child support obligations when the mother and father live in different States; however, the existence of the obligation of support is presumed by URESA. *See generally* T.C.A. § 36–5–201; *State ex rel. Department of Social Services v. Wright,* 736 S.W.2d 84 (Tenn.1987); *State v. Perry,* 198 Tenn. 389, 280 S.W.2d 919 (1955). The duty to support is not and cannot be established through a URESA action. At some point prior to the initiation of a URESA action, some State must render an order establishing a duty to support. The State originally entering a support order is known as the rendering State. T.C.A. § 36–5–202(11). The State in which a subsequent URESA petition is filed is the initiating State. T.C.A. § 36–5–202(5). That petition is then certified and transmitted from the court in the initiating State to a court of competent jurisdiction in the State in which the party against whom the obligation to support is sought to be enforced resides, T.C.A. § 36–5–213; this State is the responding State. T.C.A. § 36–5–202(12). In this case, Oklahoma is the initiating State and Tennessee is both the rendering and responding State.

■ Generally, under URESA, the sole issue for determination is enforcement of the support obligation previously established by an order of a court in a rendering State and no other issues can be raised by the respondent to a URESA petition in the court of the responding State. T.C.A. § 36–5–227 states that "[p]articipation in any proceedings under this part shall not confer upon any court jurisdiction of any of the parties thereto in any other proceeding." The primary focus of URESA is to enforce child support obligations and not to decide collateral issues such as those concerning the allocation of custody or enforcement of visitation rights. *See, e.g., State on Behalf of Ridge v. Ridge,* 483 So.2d 766, 766–767 (Fla.App.1986). The duty of the initiating State is not to determine the extent of the obligation to support but rather merely to determine whether sufficient grounds exist to permit the responding State to determine under its own law the extent of the support obligation. "URESA creates no duty to support; that statute simply provides a means of enforcing a duty of support as that duty may exist under the law of the responding state." *Ray v. Pentlicki,* 375 So.2d 875, 877 (Fla.App.1979). *See also* T.C.A. § 36–5–220(a); *State v. Perry, supra,* 198 Tenn. at 391–393, 280 S.W.2d at 921. As T.C.A. § 36–5–203 states, "[t]he remedies provided in this part are in addition to and not in substitution for any other remedies." URESA is simply a streamlined enforcement mechanism.

## A.

■ The remedial purpose served by URESA has been impaired to some extent over the years by the utilization of the statutory procedure by a custodial parent to enforce support obligations against a stationary noncustodial parent when the custodial parent purposefully fled the jurisdiction of a State to prevent the noncustodial parent from exercising court ordered visitation rights. Such a custodial parent may be found in contempt of a court order. *See, e.g., In re Marriage of Ciganovich,* 61 Cal.App.3d 289, 203, 132 Cal.Rptr. 261, 263 (1976). Courts have been struggling to minimize what is manifestly an improper use of URESA by a custodial parent to defeat the visitation rights of the noncustodial parent. Obviously, the children caught in these situations are not usually at fault and are being used to continue the psychological warfare between the parents. By filing a URESA petition after fleeing to another State, the custodial parent can avoid the jurisdiction of the rendering State's courts to impose sanctions for contempt of orders regarding visitation while taking advantage of the jurisdiction that the responding State exercises over the noncustodial parent.

The reaction of some courts to this misuse of URESA in these situations depends on several factors, including whether the responding State is also the rendering State that originally entered the child support order that the URESA action is attempting to enforce and whether the interests of the children will be irreparably harmed by refusing to enforce the child support obligation. Courts have basically taken two approaches: (1) to enforce child support obligations, regardless of a petitioner's contempt, because of the limited jurisdiction conferred on courts by URESA and in consideration of the fundamental policy of URESA to provide support for children who are usually innocent pawns, leaving open the respondent's recourse to seek other available remedies such as modification of the custody order due to petitioner's contemptuous refusal to permit visitation, or (2) to refuse to enforce support obligations where the petitioner has purposefully displayed contempt of court orders, but usually only when the responding State is also the rendering State. This latter approach is often applied on a case-by-case basis, utilizing the principles of equity and depending on all of the circumstances presented to the court. The decision is left up to the discretion of the trial court, which is not reversed absent some abuse of that discretionary authority.

These two approaches have been explored in a number of cases from other States. The California courts have consistently taken the approach of limiting URESA to support issues, relegating the noncustodial parent to other available remedies. Although recognizing that custodial parents can abuse URESA proceedings to deny visitation rights of the noncustodial parents, the California approach emphasizes that the primary purpose of the support obligation is to benefit the child or children, precluding assertion of denial of visitation rights as a defense to a URESA petition. *See, e.g., Moffat v. Moffat,* 27 Cal.3d 645, 651, 165 Cal.Rptr. 877, 880, 612 P.2d 967, 970 (1980); *Carr v. Marshman,* 147 Cal.App.3d 1117, 1120, 195 Cal.Rptr. 603, 605 (1983); *In re Marriage of Ciganovich, supra,* 61 Cal.App.3d at 294, 132 Cal.

Rptr. at 264. Other States have applied this approach as well. *See, e.g., Hood v. Hood,* 146 Vt. 195, 499 A.2d 772 (1985); *Brown v. Brown,* 16 Ohio App.3d 26, 474 N.E.2d 613 (1984); *Hester v. Hester,* 663 P.2d 727 (Okla.1983); *State ex rel. Hubbard v. Hubbard,* 110 Wis.2d 683, 329 N.W.2d 202 (1983); *County of Clearwater, Minnesota v. Petrash,* 198 Colo. 231, 598 P.2d 138 (1979). The South Dakota Supreme Court recently characterized the California approach as the majority rule, stating that "[t]he majority of states hold that interference with a noncustodial parent's visitation rights may not be raised as a defense in a URESA action." *Todd v. Pochop,* 365 N.W.2d 559, 559 (S.D.1985) (citations omitted).

On the other hand, in *Courten v. Courten,* 92 A.D.2d 579, 459 N.Y.S.2d 464 (1983), the New York Supreme Court, Appellate Division, applied the suspension of support approach and denied recovery of child support arrears:

"It is fundamental that an unjustified denial of visitation rights by the custodial parent may suspend the noncustodial parent's obligation to pay child support during the period that visitation rights are denied.... However, such a suspension is not automatic. Such claims must be approached on a case-by-case basis."

459 N.Y.S.2d at 467. The New York approach is more completely articulated in *Shinouda v. Shinouda,* 96 Misc.2d 290, 409 N.Y.S.2d 184 (1978), in which the appellate court addressed the problem of a fleeing custodial parent who utilizes URESA to defeat the noncustodial parent's visitation rights and refused to view support as entirely unrelated to the issues of visitation or contempt of court:

"The dilemma can be resolved ... by not fastening absolute liability upon the father in all cases where the mother without justifiable excuse removed the child to a distant state thereby depriving the father of his visitation rights, nor, at the other extreme, in finding in these facts complete exoneration of parental responsibility. Although the court has no authority to make an order of visitation in

an interstate reciprocal support proceeding as it might in an inter-county proceeding ... this court does have the authority to condition support payments upon the mother's compliance with reasonable visitation rights...."

409 N.Y.S.2d at 188 (citations omitted). Under the New York approach, the facts and equities are carefully considered to determine whether the trial court should exercise its discretion to order the support to be conditionally enforced, in part or in full, when the custodial parent has intentionally fled the State to deprive the noncustodial parent of visitation in violation of court orders. *See also, e.g., In re Marriage of Panganiban*, 396 So.2d 1156, 1157 (Fla. App.1981); *Bethell v. Bethell*, 268 Ark. 409, 597 S.W.2d 576, 581 (1980); *State ex rel. Arvayo v. Guerrero*, 21 Ariz.App. 173, 517 P.2d 526, 529 (1973); *Chandler v. Chandler*, 109 N.H. 477, 256 A.2d 157, 159 (1969).

Where discretionary enforcement of support obligations is the approach of the court to this persistent problem, the principles of equity are heavily relied upon to evaluate the conduct of the parties, the circumstances of the case, and the potential harm to the children. In *Bethell v. Bethell, supra*, the Arkansas Supreme Court recognized that "[a]s a general rule, an ex-spouse is entitled to judgment for all past due installments ... not barred by the statute of limitations, unless equity cannot lend its aid because of the actions or conduct of the ex-spouse seeking judgment...." 597 S.W.2d at 581. Similarly, a Florida Court of Appeals stated that, on facts comparable to those in this case, "[t]he court may refuse to hold a party in contempt for failure to pay an arrearage, but may entirely refuse to enforce payment of past due child support only under certain exceptions.... Those exceptions are in the nature of laches, estoppel, waiver, reprehensible conduct on the part of the parent having custody or other strong equitable reasons." *In re Marriage of Panganiban, supra*, at 1157 (citations omitted). Other courts have found that the trial court's discretionary authority in child support and custody cases extends to tailoring

the remedy to the conduct of the parties and to the circumstances of the case. *See, e.g., Kirby v. Kirby*, 405 So.2d 207, 209 (Fla.App.1981); *State ex rel. Arvayo v. Guerrero, supra*, 21 Ariz.App. at 176, 517 P.2d at 529; *Chandler v. Chandler, supra*, 109 N.H. at 479–80, 256 A.2d at 159; *State ex rel. Shannon v. Sterling*, 248 Minn. 266, 80 N.W.2d 13, 22 (1956).

In most of these cases, the continuing jurisdiction of a rendering State is an important, if not controlling, factor in determining whether the court should suspend or forgive the support obligation when also acting as a responding State court in URESA proceedings. In *Kline v. Kline*, 260 Ark. 550, 542 S.W.2d 499 (1976), the Arkansas Supreme Court, finding that visitation was controlled by the law of the rendering State and Arkansas was a responding State, declined to act in excess of the limited jurisdiction of URESA because continuing jurisdiction remained in the rendering State. 542 S.W.2d at 500. California refused to enforce support when the rendering State court, whose law was controlling, had suspended the support obligation, leaving no existing order of support to be enforced by a responding State. *Moffat v. Moffat, supra*, 27 Cal.3d at 659, 165 Cal. Rptr. at 885, 612 P.2d at 976. The primacy of the rendering State's jurisdiction is given deference in these circumstances; that court's continuing jurisdiction over the obligation to support as well as over collateral issues of visitation, custody, and contempt is fundamental to the existence of an enforceable support obligation. In this context, the Michigan Court of Appeals has succinctly stated the issue for this Court to decide under Tennessee law:

"The question ... is whether [respondent] may raise such defense [of contempt of court orders regarding visitation] to his obligation to provide support in a URESA proceeding where Michigan is the responding state, when Michigan was also the jurisdiction which originally imposed an obligation to support the minor children in a judgment of divorce entered in a Michigan court."

*Watkins v. Springsteen,* 102 Mich.App. 451, 301 N.W.2d 892, 894 (1980).

B.

In the case before us, the Court of Appeals concluded that a proceeding pursuant to a URESA petition does not give a trial court in the responding State jurisdiction to rule on issues such as contempt or visitation, limiting the issue to enforcement of support. Stating "that the trial court was without jurisdiction to find the petitioner in contempt of the visitation order," the Court below ruled that it was "improper for the trial judge to base forgiveness of the child support arrearage on such a finding." The Middle Section then assumed for purposes of discussion that if such jurisdiction were available to the court, "denial of child support arrearage in this case is directly at odds with current Tennessee law," relying on *Hester v. Hester,* 59 Tenn.App. 613, 443 S.W.2d 28 (1968), and other cases.

In considering the approaches taken by other States when confronted by the problem of invoking URESA to enforce the support obligation while contemptuously denying the noncustodial parent's visitation rights, the foregoing discussion established that the obligation to support is determined under the law of the responding State and is ultimately premised on an existing order of support previously entered in the rendering State, which generally retains its continuing jurisdiction. While we would agree with the Court of Appeals that URESA does not ordinarily confer jurisdiction on a court in a responding State to determine any issue but enforcement of the support obligation, that is not the situation in this case. As noted, Tennessee is both the responding State and the rendering State. Moreover, established Tennessee law does not absolutely prohibit forgiveness of arrearages in some circumstances.

■ The Circuit Court of Davidson County has continuing jurisdiction over custody, support, contempt and other collateral issues that may arise subsequent to a divorce decree entered in that court. *See* T.C.A. § 36–5–101(e) (Supp.1987); § 36–5–103(b)(1) (Supp.1987); *Kizer v. Bel-*

*lar,* 192 Tenn. 540, 241 S.W.2d 561 (1951); *Jarvis v. Jarvis,* 664 S.W.2d 694 (Tenn.App. 1983); *Darty v. Darty,* 33 Tenn.App. 321, 232 S.W.2d 59 (1949); *Crane v. Crane,* 26 Tenn.App. 227, 170 S.W.2d 663 (1942). "The court is not divested of this continuing jurisdiction by the death of a party or his or her change of residence to another state." *Jarvis v. Jarvis, supra,* at 696 (citations omitted). Further, a court in divorce and support proceedings sits as a court of equity. *Kizer v. Bellar, supra,* 192 Tenn. at 545, 241 S.W.2d at 563; *Mayer v. Mayer,* 532 S.W.2d 54, 58 (Tenn.App. 1975). The statutes governing divorce, support, and custody have been consistently characterized as having a remedial purpose, providing the trial court with substantial discretionary powers to fashion orders based on the circumstances of the case. *See, e.g., Wilson v. Bowman,* 622 S.W.2d 58, 61 (Tenn.App.1981); *Gossett v. Gossett,* 34 Tenn.App. 654, 659, 241 S.W.2d 934, 937 (1951); *Crane v. Crane, supra,* 26 Tenn.App. at 231, 170 S.W.2d at 665. "In short, it was the purpose of this beneficent statute to give the trial court such elasticity of action as was necessary to meet the equities of the case and as well take care of the interest of the State, which is a third party in interest in divorce cases." *Daugherty v. Dixon,* 41 Tenn.App. 623, 626, 297 S.W.2d 944, 945 (1956). T.C.A. § 36–5–101(e)(7) expressly provides that "[i]n making its determination concerning the amount of support of any minor child or children of the parties, the court shall consider all relevant factors, including ... [s]uch other factors as are necessary to consider the equities for the parents and children."

*Hester v. Hester, supra,* does state the general and guiding rule that

"[p]rovisions in divorce decrees for support and visitation rights have separate and distinct purposes. Support payments are decreed to meet the material needs of the child. Visitation rights are also for the benefit of the child, as well as the father. Neither should be left to depend upon the will or whim of the parents or either of them."

59 Tenn.App. at 620, 443 S.W.2d at 31. Nevertheless, the *Hester* court went on to "recognize ... that there are some cases holding the wife will be denied the aid of the court in collecting alimony [or support[2]] where she continues to deny in bad faith the visitation rights of the father, at least until she shows a disposition to desist from such wrongdoing." 59 Tenn.App. at 622, 443 S.W.2d at 32. The Court of Appeals in the case *sub judice* also cited *Pendray v. Pendray*, 35 Tenn.App. 284, 245 S.W.2d 204 (1951), in support of the general principle that "the refusal of the mother to allow the father to see the children does not deprive him of the obligation of supporting the children of the marriage." 35 Tenn.App. at 287, 245 S.W.2d at 206.[3] In *Pendray*, however, the Court of Appeals permitted forgiveness of an arrearage based on the equities of the case and the reliance of the support obligor, although future support was ordered. *Id.* Similarly, in *Gossett v. Gossett, supra*, the Court of Appeals again recognized the trial court's discretionary authority in dealing with support and visitation conflicts, finding "that the Chancellor had the power of his own volition to grant relief from past due installments [of support]," 34 Tenn. App. at 659, 241 S.W.2d at 937, and explicitly held "that the Chancellor may exercise the power on his own initiative, where the evidence justifies it." 34 Tenn.App. at 660, 241 S.W.2d at 937. In *Gossett*, instead of denying relief, the Chancellor reasoned that, since both parties had come before the court with unclean hands and considering the merits and equities of the case, " 'the ends of justice and equity will be better accomplished by overlooking [petitioner's unclean hands] and considering the petition on its merits; but, in turn, offsetting that by overlooking any default on the part of the respondent....' " 34 Tenn. App. at 661, 241 S.W.2d at 937. The discretionary authority of the trial court to for-

give arrearages was exercised in *Gossett* and affirmed by the Court of Appeals.

■ While we reaffirm the policy favoring enforcement of support, clearly trial courts have the discretion in such cases to suspend or forgive arrearages in support payments; the cases do not set down a rule so inflexible as to tie the hands of courts faced with circumstances either in which the application of general principles would work an injustice on an innocent party, while unduly benefiting a party whose wrongful conduct created the problem, or where both parties share in the fault. Elsewhere, the Court of Appeals has allowed trial courts "to forgive arrearages in child support arising out of a paternity action. Such authority is derived from the remedial purpose of T.C.A. [§ 36-2-111]. From this authority the Trial Judge as a matter of discretion has the power to grant retroactive relief of delinquent child support." *Wilson v. Bowman, supra*, 622 S.W.2d at 61. The *Wilson* court also observed that "Tennessee has adopted the minority rule that in cases of annulment, divorce or separate maintenance a decree for the support of a minor child, even as to past due and unpaid installments, may be modified by the court at any subsequent term.... This rule is based on the language of T.C.A. [§§ 36-5-101, 36-6-101, and 36-6-102]." *Id.* The principles of equity that underlie this discretionary authority of trial courts in such matters have long been applied in divorce and support cases and consideration of each case on its facts is clearly contemplated by the statutes controlling these matters. Consequently, the Court of Appeals was not correct that the trial court in this case did not have the discretionary authority to forgive arrearages when the equities of the case supported such a remedy.

■ Furthermore, application of the principles of equity in a URESA proceeding has been permitted by the Court of Appeals

---

**2.** The rationale applied in alimony enforcement proceedings is also applied in support cases. *See, e.g., Daugherty v. Dixon, supra*, 41 Tenn. App. at 628, 297 S.W.2d at 946.

**3.** The general rule expressed in these cases dates at least to *Evans v. Evans*, 125 Tenn. 112, 140 S.W. 745 (1911), and was reaffirmed by this Court in *Thomas v. Thomas*, 206 Tenn. 584, 335 S.W.2d 827 (1960), which was also cited by the appellate court in this case.

as well. In *Koehler v. Koehler,* 559 S.W. 2d 944 (Tenn.App.1977), Tennessee was the responding State and the Court of Appeals found "that the language of the Tennessee statute clearly indicates that the Court is vested with authority to increase or reduce child support payments, depending upon the facts and circumstances of each case." 559 S.W.2d at 950. While jurisdiction in a URESA case is ordinarily limited to the extent of support if Tennessee is the responding State, when Tennessee is both the responding State as well as the rendering State, concurrent jurisdiction lies in the court that initially entered the support order. Not only may that court entertain and enforce the support order in a URESA proceeding but it may exercise the continuing jurisdiction retained by such court subsequent to the entry of the original order of support, which is the basis of the URESA enforcement action. Of course, any order that changes custody or substantially alters the former decree should be entered only after a hearing at which both parties have notice and the opportunity to appear, *Darty v. Darty, supra,* 33 Tenn.App. at 330, 232 S.W.2d at 63 [4]; however, the authority of a trial court to refuse to aid a party in contempt has been consistently recognized by Tennessee courts and is based on the State's interest in protecting the integrity of its courts. " 'It is a general rule that a party who is in contempt will not be heard by the court, when he wishes to make a motion or ask a favor.... His first duty is to purge his contempt....' " *Bradshaw v. Bradshaw,* 23 Tenn.App. 359, 364, 133 S.W.2d 617, 620 (1939) (citation omitted). *See also Gossett v. Gossett, supra,* 34 Tenn.App. at 657–658, 241 S.W.2d at 936. As in *Gossett,* the court may also act within its discretion to take into account a party's contempt when fashioning a remedy instead of flatly refusing to hear such a party [5]; in view of the general rule favoring enforcement of support obligations,

this is undoubtedly the better approach because providing for the child or children is the primary purpose. Thus, in considering the equities of the case, the court should consider the likelihood of harm to the child or children if payment of support is denied to any extent. After all, the children caught in the conflict between their parents are usually innocent victims of one or both of the parents' vindictive and irresponsible behavior.

■ In the proper cases, therefore, when Tennessee is not only acting as the responding State in a URESA setting but retains continuing jurisdiction over the original order of support as the rendering State, and thus has an independent source of jurisdiction aside from URESA, a trial court may weigh the equities and merits to fashion an appropriate order. As the Florida Court of Appeals observed in *Ray v. Pentlicki, supra,*

"When a URESA proceeding for enforcement of a child support obligation is lodged in the same court of the responding state in which antecedent divorce proceedings took place, the URESA proceeding is maintainable as a separate remedial action and may not be dismissed simply because the same court retains jurisdiction of the subject of child support as part of the divorce proceeding."

375 So.2d at 877 (citations omitted). The orders entered under this concurrent jurisdiction should, nevertheless, be made compatible.

"The remedies provided by the URESA statute are in addition to and entirely separate from and independent of any remedies existing under other applicable provisions of law.... Thus the trial judge simply exercised the full range of authority available to him in determining the relative rights and obligations of the parties. The court's finding, moreover, that appellant willfully refused to comply

---

4. Compare the procedure suggested in *State ex rel. Department of Social Services v. Wright, supra,* which could also be utilized in other contested URESA proceedings. See also Clark, *Law of Domestic Relations* (West 1968), § 6.6, at pp. 208–209.

5. While a court may decline to exercise its contempt powers or be otherwise unable to impose sanctions for contempt, it may still refuse to aid a party standing in contempt of court orders for compelling equitable reasons.

with its order directing her to allow the children to visit their father (which is amply supported by the record), is an extraordinary circumstance justifying the discharge of the past due amounts."

*Kirby v. Kirby, supra,* 405 So.2d at 209 (citations omitted).

### III.

■ The trial court in this case determined that Petitioner's unpurged contempt of the court's previous orders precluded enforcement of the arrearages. That court did not otherwise attempt to impose sanctions for contempt on Petitioner, who was not personally before the court, and did not modify the order controlling custody or address Respondent's visitation rights.[6] The court ordered that the $240 arrearage, which accrued prior to Petitioner's disappearance, be paid and reduced the amount of continuing support to be paid in the future for the one remaining minor child of the parties. In our opinion, the trial court did not base its denial of the arrearages on Petitioner's contempt; rather, the judge simply refused the aid of the court to Petitioner to enforce payment of the arrearage, not to punish contempt but because Petitioner had unclean hands. We think that such an action was not only within the discretion afforded a trial court in these cases, which exercise of discretion will not be reversed absent some abuse, but was consistent with the law and policy of Tennessee.

We note that, on this record, the Respondent acted in good faith at all times and that at no time did his conduct appear to contribute to the problems between the parties. He never denied his responsibility to support his children and he voluntarily paid support throughout the period that he was aware of Petitioner's address. He immediately resumed support payments when he was informed of Petitioner's whereabouts by Oklahoma authorities. Not only had Petitioner once disappeared with the children, taking them to Virginia in 1981,

but to avoid compliance with the trial court's visitation order in 1982, she again disappeared. During a two year period between July, 1982, and July, 1984, Petitioner made no effort to contact Respondent or to enforce his support obligation, much less to allow him to exercise his visitation rights. She chose to support these children on her own during this time. One of their children has now reached majority and Respondent is no longer legally liable for his support. Considering the conduct of the parties and the changed circumstances, the equities clearly weigh in Respondent's favor. To award Petitioner the substantial arrearage that has accrued would amount to a windfall to Petitioner, who has not only slept on her rights but stands in contempt of court, and the record shows neither that the money would be used for the benefit of the children nor that denial of the arrearage after so many years would cause irreparable harm to them.

■ We recognize that Respondent simply stopped paying support when he could no longer locate Petitioner and their children and that he did so without authorization from the court. He did not, however, refuse to pay support because he was denied visitation and had attempted to enforce his visitation rights through the proper methods. Although the preferable procedure would have been for Respondent to have petitioned the court to suspend his support obligation while he had lost contact with Petitioner and the children and to have paid the support to the Davidson County Circuit Court Clerk pursuant to T.C.A. § 18-1-108(5) until his liability for the support could have been determined by the trial court, we are not persuaded that on this record Respondent's failure to pay support was "premised on a simple, irresponsible desire to avoid paying child support...." *Cooper v. Cooper,* 59 Ill.App.3d 457, 16 Ill.Dec. 818, 375 N.E.2d 925, 930 (1978). On the contrary, the opposite appears to be the case. When, however, a

---

**6.** At the close of Respondent's testimony, the trial court commented that "[t]his woman obviously is in contempt of the Fifth Circuit Court Order and I will not condone that, but I can't try a contempt today." The trial judge clearly understood the limitations of the court's jurisdiction in this case.

support obligor does continue paying to the court clerk under T.C.A. § 18–1–108(5) because the obligee cannot be located, the trial court could still exercise its discretion to return the money when the circumstances justified it as in this case.

Accordingly, where concurrent jurisdiction exists under URESA along with the continuing jurisdiction retained by trial courts over such matters, "[t]he trial court is vested with wide discretion in awarding support for minor children," *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn.App. 1980) (citation omitted), and shall take into account "[s]uch ... factors as are necessary to consider the equities for the parents and children." T.C.A. § 36–5–101(e)(7) (Supp.1987). No abuse of the trial court's discretion having been shown, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court. The costs are taxed to Petitioner. The case is remanded to the trial court for entry of any orders necessary.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.

## OPINION ON PETITION TO REHEAR

DROWOTA, Justice.

The State of Tennessee has filed a Petition to Rehear pursuant to Rule 39, T.R. A.P. The Petition does not seek a reconsideration of the holding in this case, conceding that the opinion correctly states the law in Tennessee, but asks the Court to clarify some of the implications of the opinion. We continue to adhere to the views set out in the opinion but find it necessary to address one of the State's contentions.

▪ One of the issues raised by the state concerns the Court's construction of URESA in Section II of the opinion. The State asks that we reconsider the statements that "[t]he duty to support is not and cannot be established through a URESA action. At some point prior to the institution of a URESA action, some State must render an order establishing a duty to support." Citing T.C.A. § 36–5–207, which incorporates the definition of duty of support in T.C.A. § 36–5–202(3) and which provides that the duties of support enforceable under URESA "are those imposed or imposable" by law, the State relies on three cases to contend that this construction conflicts with prior case law. We cannot agree. We acknowledge that some States have construed the imposability language in URESA to permit a URESA action to establish a new duty of support but other States have rejected this interpretation. By its own terms, URESA is an enforcement statute that presumes the existence of an established duty to support; a URESA proceeding does not itself decide the duty to support exists but merely provides an additional (not substitutional) remedy to enforce the duty of support, imposed or imposable by law, once that duty is judicially determined at a fair hearing. Of course, nothing in URESA would prevent a responding court from ordering support in a URESA proceeding if the respondent makes an admission of the underlying obligation to support that would be imposable by law. When a duty to support is imposable and no admission of the obligation to support is made by a URESA respondent, due process requires that the duty be judicially imposed by an action to obtain an order of support. Numerous statutes vindicate rights to support. While the existence of the obligation to support might be easily established in some instances, in others that duty is not readily shown. A summary procedure is inappropriate because each case presents its own circumstances. By definition, a duty imposable by law is one that has not yet been judicially imposed and URESA cannot substitute for the due process required to permit a court to enforce such a duty of support. Without a prior order or adjudication, the URESA petition requires the responding State to assume the role of a rendering State, acting under its concurrent jurisdiction over support matters.[1] In effect, a

---

1. Once a court in a rendering State has taken jurisdiction, its orders are what are enforced in a URESA proceeding under the laws of the responding State. If the rendering State has suspended the support obligation, then nothing exists to be enforced in a URESA action. *See,*

consolidated action results in which the Court first determines the existence of the duty of support, rendering an order to support, and then enforces that order under URESA.

As recently as *State ex rel. Department of Social Services v. Wright*, 736 S.W.2d 84 (Tenn.1987), this Court recognized that "URESA's goal [is] to simplify and reduce the costs of enforcing a ... duty of support, *which has already attached* by virtue of judicial determination or admission." 736 S.W.2d at 86 (emphasis in original). In *Wright*, faced with an attempt to establish paternity—and thus the concomitant duty of support—through a URESA action, the Court refused to permit the burden of proof to be unconstitutionally shifted from the petitioner to the putative father and held that, absent a prior court order establishing any duty to support or an admission of the duty by the URESA respondent, "URESA's purpose will not ... support discriminatory treatment between URESA respondents and 'in-state' paternity defendants *before* the duty to support has attached." *Id.* (emphasis in original). If an adjudication or admission of the duty of support exists, no issue of whether the duty is imposable arises because due process has established the right to enforce that duty and entitles a person to utilize the streamlined procedures of URESA. We can see no meaningful difference between a case involving a putative father and one involving any other person who has not yet admitted a duty or been ordered by a court to pay support; the only distinction is the evidentiary difficulty of establishing that the obligation is imposable by law. Although we do not necessarily agree with the analysis of URESA in *Olson v. Olson*, 534 S.W.2d 526 (Mo.App. 1976), we do concur in that Court's interpretation of the imposability language:

"A duty of support 'imposable by law' is one arising out of a relationship—a duty of support *to be adjudicated* and reduced to decretal form in the responding state upon proper evidence at a hearing

after due notice to the defendant, through the instrumentality of this new, additional remedy afforded by [URESA]."

534 S.W.2d at 530 (emphasis in original). As the Georgia Court of Appeals noted in *Balasco v. County of San Diego*, 140 Ga. App. 482, 231 S.E.2d 485 (1976), URESA "clearly gives [an obligee] the right to institute [such] proceedings against an [obligor] who has not met his obligation of support; we find no authorization however for the URESA provisions to be used to force a respondent to meet this obligation other than under the terms of a valid court order." 231 S.E.2d at 488. *Wright* requires that, absent an admission or a pre-existing court order, the burden of establishing the duty of support remains on that party to whom it is allocated under the relevant statutes by which the underlying duty to support would be imposed if the action had originated in Tennessee. Despite its streamlined procedures and its purpose, URESA cannot substitute for a proper and fair adjudication of the existence *vel non* of a support obligation in the first instance. As the Supreme Court of South Carolina observed in *Wilson v. Wilson*, 274 S.C. 516, 266 S.E.2d 65 (1980), "URESA was not intended to create a separate means of determining the amount and scope of the obligation to support, but the act is intended to improve and extend enforcement." 266 S.E.2d at 66. *See also In re Marriage of Ryall*, 154 Cal.App.3d 743, 747, 201 Cal. Rptr. 504, 507 (1984); *Moffat v. Moffat, supra*, 27 Cal.3d at 659, 165 Cal.Rptr. at 885, 612 P.2d at 975; *People ex rel. St. Louis v. St. Louis*, 90 Ill.App.3d 449, 45 Ill.Dec. 824, 413 N.E.2d 157, 159 (1980); *Ray v. Pentlicki*, 375 So.2d 875, 877 (Fla. App.1979); *State ex rel. Arvayo v. Guerrero*, 21 Ariz.App. 173, 517 P.2d 526, 528–529 (1973); *Thompson v. Thompson*, 93 So.2d 90, 92 (Fla.1957).

Aside from the State's reliance on *Wright* in support of its argument, its reliance on two other cases is also misplaced.

*e.g., Moffat v. Moffat*, 27 Cal.3d 645, 659–660, 165 Cal.Rptr. 877, 885–886, 612 P.2d 967, 975–    976 (1980).

While *Ratcliffe v. Ratcliffe,* 709 S.W.2d 609 (Tenn.App.1986) (enforcement of spousal support under URESA), does appear to support the State's position, the *Ratcliffe* court's reliance on *Brown v. Thomas,* 221 Tenn. 319, 426 S.W.2d 496 (1968), is inapposite. *Brown v. Thomas, supra,* cited in *Wright,* involves substantially the same situation as that in *Wright* and does not support the construction given to URESA in *Ratcliffe.* We do not, however, believe it is necessary to overrule *Ratcliffe* and think the cases can be reconciled. The URESA petitioner in *Brown* sought to establish the paternity and duty of support of a putative father; the URESA respondent answered the petition by demurrer. Although the Court did state that "[u]nder [URESA], the duty of support need not be the result of court action; but may be any duty imposable by law,", 221 Tenn. at 323, 426 S.W.2d at 498, the procedural posture of the case distinguishes it from *Wright* because a demurrer is an *admission* of the allegations of a pleading for the purposes of testing its legal sufficiency. 221 Tenn. at 322, 426 S.W.2d at 497. The Court then remanded *Brown* for further proceedings, just as did the Court of Appeals in *Ratcliffe.* We think that *Brown* and *Wright* can be reconciled because in each case the same action (establishment of paternity) was presented and *Wright* resolved any unanswered questions concerning the proper procedures to be followed when the duty of the URESA respondent to support has neither been established by a prior court order nor been admitted by the respondent. In this sense, *Ratcliffe* is not inconsistent with either of our other cases because under *Wright* an imposable duty must be demonstrated in what is in effect a consolidated action under the relevant statutes vindicating the right to support, which is reduced to an order that may then be enforced by the court under URESA. Consequently, we must reaffirm the Court's position that URESA cannot substitute for the due process required to establish the duty of support in the first instance if that duty is not voluntarily undertaken by a respondent. If no other State has rendered an otherwise unsuspended order of support that can be enforced under URESA, a URESA petition has the effect of invoking the responding State's concurrent jurisdiction over support matters and thus the procedures in *Wright* may be used to adjudicate the existence of the duty of support. Once the duty is reduced to an order of support, it may be enforced under URESA in a consolidated action.

■ The State raises two additional issues. Referring to a recent amendment to T.C.A. § 36-5-101(a), which deleted a portion of the statute and added language now codified at T.C.A. § 36-5-101(a)(5) (Supp. 1987), the State requests clarification that the result reached in *Hoyle v. Wilson* can no longer obtain because it is now prohibited by this statute. This statute was not applicable to the situation in *Hoyle v. Wilson* and we decline to issue an advisory opinion on the proper ccnstruction of the amendment until the issue of its application is squarely presented in another case. The State also asks that we clarify the observation that the record in *Hoyle v. Wilson* did not show that the arrearages would be used for the benefit of the children because no such requirement has previously been imposed on a support obligee. Although recognizing the context in which the Court made this statement, the State wants to avoid any implication that such a burden could be imposed on obligees seeking arrearages as a routine practice. We reaffirm the existing law that no such showing is ordinarily required because enforcement of arrearages constitutes a form of reimbursement for the obligee's assumption of the entire duty of support during the period covered by arrearages. In *Hoyle v. Wilson,* given the Petitioner's long delay in attempting to enforce the duty of support, her evasion and contempt of court orders, the termination of Respondent's duty to support the oldest child during Petitioner's disappearance, and Respondent's good faith efforts regarding his support obligations, this statement was made in reference to weighing the equities of the case. The Court did not intend to impose such a burden on a support obligee in routine cases. We do, however, want to encourage

the timely assertion of the right to support by obligees so that any accrual of arrearages clearly results from an obligor's refusal or failure to pay.

Accordingly, the Petition to Rehear is denied. Costs are taxed to the State.

HARBISON, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.