# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

STATE OF TENNESSEE ex rel  )
SHERRY SHAVER,     )
             )
   Petitioner/Appellant, ) **Davidson Circuit No. 95R-593**
             )
VS.         ) **Appeal No. 01A01-9610-CV-00474**
             )
RICHARD D. SHAVER,   )
             )
   Respondent/Appellee. )

**FILED**

**July 18, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE MURIEL ROBINSON, JUDGE

**JOHN KNOX WALKUP**
**Attorney General and Reporter**
**KIMBERLY M. FRAYN**
**Assistant Attorney General**
Nashville, Tennessee
Attorney for Appellant


**C. TRACEY PARKS**
**HARSH, PARKS, HARSH**
Gallatin, Tennessee
Attorney for Appellee

**REVERSED**

              **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

In this enforcement of child support case, the State of Tennessee ("State") brings this action on behalf of Sherry Shaver ("Mother") and her minor child, Amber Nicole Shaver ("Amber"), in order to collect child support arrearages from Richard Shaver ("Father") based upon a Texas divorce decree. The trial court held that Father's child support obligations irrevocably and absolutely terminated on August 24, 1987 when Father filed an affidavit relinquishing his parental rights to Amber. The trial court further held that Father was not in arrears for any child support payments which accrued from and after August 24, 1987. The State appeals the judgment of the trial court arguing that Father's child support obligation did not terminate upon the filing of his affidavit which purported to relinquish his parental rights and that child support arrearages did accrue prior to Father's signing of the affidavit. For the reasons stated hereafter, we reverse the judgment of the court below.

**FACTS**

On October 10, 1982, Father and Mother had a child, Amber Nicole Shaver ("Amber"), born during their marriage in the State of Texas. On April 13, 1983, a final decree of divorce was entered in the State of Texas, dissolving Mother and Father's marriage. The Texas divorce decree awarded custody of Amber to Mother and ordered Father to pay child support in the amount of $180.00 per month beginning on March 15, 1983 and ending when Amber reached the age of eighteen or when a court order directed otherwise.

On August 24, 1987, Charles Troy Simpson and Tommie Marie Simpson (the "Simpsons"), Amber's maternal grandparents, filed a petition to adopt Amber in the District Court of Dallas County, Texas. In their petition, the Simpsons alleged that Mother had left Amber with them and had disappeared to some unknown location and that Father had not provided support for Amber and had not requested to visit Amber in over a year. Filed with the Simpsons' petition for adoption was an affidavit signed by Father which purported to relinquish his parental rights to Amber. In his affidavit, Father stated in part as follows:

> I am the father of AMBER NICOLE SHAVER, a female born
> October 10, 1982.

> I am presently obligated by Court Order to make payments for the support of the child and the child owns no property.
>
> I was fully informed of my rights, powers duties and privileges as a parent before executing this affidavit. I understand that this Affidavit is irrevocable. I understand that this means that I cannot change my mind not now or at any time in the furture [sic] as for the return of my child. I agree that my rights as father may be terminated.
>
> I execute this affidavit freely and voluntarily because I deem it to be in the best interest of the child.
>
> I designate Mr. and Mrs. Charles T. Simpson as qualified persons and suitable, competent adults to serve as managing conservator of the child if my parental rights are terminated.
>
> I waive the right to issuance, service and return of citation upon me in a suit to terminate the parent-child relationship between the child and me and any other suit affecting the parent-child relationship between the child and me.

In December 1987, the Simpsons voluntarily dismissed their action to adopt Amber. A court order terminating the parental rights of either Father or Mother was never obtained.

Father executed another affidavit on June 26, 1996 which was filed with the trial court. In his second affidavit, Father stated in part as follows:

> 4. I paid child support for Amber Nicole Shaver until June 29, 1987.
>
> 9. I lived in Texas at the time of the surrender [August 24, 1987] and continued to live at the same address and work at the same job for several years before moving to Tennessee.
>
> 10. I was never informed by Sherry or her parents, the Simpsons, that the adoption was not finalized.
>
> 11. I have had no contact with, nor have I been contacted by Sherry or any member of her family since August 1987.
>
> 12. I have not had any contact with Amber Nicole Shaver since executing the surrender in August 1987.

On August 25, 1995, the State of Texas filed a Uniform Reciprocal Enforcement of Support Act ("URESA") petition on behalf of Mother and Amber. Pursuant to the URESA petition, Texas requested that the State of Tennessee enforce the existing Texas divorce decree ordering Father to pay child support and to collect the arrearages which had accumulated under the decree. The URESA petition seeks support from the period beginning May 1983 and ending July 1995. In an affidavit filed with the trial court, Mother stated that she has never received child support payments from Father pursuant to the Texas divorce decree.

3

**LAW**

The sole issue before this Court is as follows: whether the trial court erred in failing to enforce a Texas divorce decree requiring Father to pay child support payments for his minor child by holding that Father terminated any ongoing duty of support when he executed an affidavit surrendering his parental rights.

URESA serves to facilitate the enforcement and collection of child support obligations when the mother and father live in different states. T.C.A. § 36-5-201(1996); Hoyle v. Wilson, 746 S.W.2d 665, 668 (Tenn. 1988). The expressed legislative purpose in enacting URESA was "to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." T.C.A. § 36-5-201(1996). The Tennessee Supreme court has stated that URESA is remedial in nature and should be liberally construed with reference to the object sought to be obtained. Martin v. Martin, 373 S.W.2d 609, 611 (Tenn. 1963).

Under Tennessee's adoption of URESA, a "duty of support" is defined as one that "includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance or otherwise." T.C.A. § 36-5-202(3)(1996). Similarly, a "support order" is defined as "any judgment, decree or order of support, whether temporary or final, whether subject to modification, revocation or remission regardless of the kind of action in which it is entered." T.C.A. § 36-5-202(14)(1996).

Enforceable duties of support under our URESA statute are described in T.C.A. § 36-5-207(a)(1996) as follows:

> **What duties are enforceable -- Filing of original paternity and support petitions. --** (a) Duties of support applicable under this part are those imposed or imposable under the laws of any state where the obligor was present during the period for which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

4

As to the enforcement of support orders, T.C.A. § 36-5-220(1996) reads in part as follows:

> **Order of support -- Enforcement. --** (a) If the court of the responding state finds a duty of support, it may order the respondent to furnish support or reimbursement therefor and subject the property of the respondent to such order.

Arrearages are included within the concept of "duties of support" that this state may enforce pursuant to a petition filed under URESA. See T.C.A. § 36-5-209(a)(1996).

The existence of the obligation of support is presumed by URESA. Hoyle, 746 S.W.2d at 668; State ex rel. Dep't of Social Servs. v. Wright, 736 S.W.2d 84, 86 (Tenn. 1987). The duty to support is not and cannot be established through a URESA action. Hoyle, 746 S.W.2d at 668.

At some point prior to the initiation of a URESA action, some state must render an order establishing a duty of support. Hoyle, 746 S.W.2d at 668. The state in which a support order is originally entered is known as the rendering state. T.C.A. § 36-5-202(11)(1996). The state in which a subsequent URESA petition is filed is the initiating state. T.C.A. § 36-5-202(5)(1996). The state in which any proceeding pursuant to the proceeding in the initiating state is or may be commenced is the responding state. T.C.A. § 36-5-202(12)(1996).

The duty of the initiating state is not to determine the extent of the obligation to support but rather to determine whether sufficient grounds exist to permit the responding state to determine under its own law the extent of the support obligation. Hoyle, 746 S.W.2d at 668. See also Ray v. Pentlicki, 375 So.2d 875, 877 (Fla. Ct. App. 1979) (stating that URESA creates no duty of support but simply provides a means of enforcing a duty of support as that duty may exist under the law of the responding state).

The Tennessee Supreme Court in Hoyle v. Wilson, 746 S.W.2d 665, 668 (Tenn. 1988), stated:

> Generally, under URESA, the sole issue for determination is enforcement of

5

the support obligation previously established by an order of a court in a rendering State and no other issues can be raised by the respondent to a URESA petition in the court of the responding state.  T.C.A. § 36-5-227 states that "[p]articipation in any proceedings under this part shall not confer upon any court jurisdiction of any of the parties thereto in any other proceeding."  The primary focus of URESA is to enforce child support obligations and not to decide collateral issues such as those concerning allocation of custody or enforcement of visitation rights.

As stated in its petition, the State of Texas seeks support payments from Father for the period beginning May 1983 and ending July 1995.  Because Father stated in an affidavit that he moved to Tennessee "several years" after the filing of his August 24, 1987 affidavit wherein he purported to relinquish his parental rights to Amber, Father, by his own admission, has resided in the State of Tennessee during the period for which enforcement is sought.  Thus, Tennessee, as the responding state, may order Father to pay child support or reimbursement therefor pursuant to the Texas divorce decree which ordered Father to pay child support in the amount of $180 per month beginning on March 15, 1983 and ending when Amber reached the age of eighteen or when a court order directed otherwise.

Under the laws of this state, the adoption of a child is governed by statute.  In Re Adoption of Mullins, 412 S.W.2d 896, 900 (Tenn. 1967); Bank of Maryville v. Topping, 393 S.W.2d 280, 282 (Tenn. 1965); In re Van Huss, 338 S.W.2d 588, 590-91 (Tenn. 1960); In re Petition to Adopt Clements, 296 S.W.2d 875, 879 (Tenn. 1956); Coonradt v. Sailors, 209 S.W.2d 859, 861 (Tenn. 1948); Scott v. Pulley, 705 S.W.2d 666, 670 (Tenn. Ct. App. 1985).  In order to effect a legal adoption, the statutes must be followed with strict compliance.  Id.

The supreme court in In re Petition to Adopt Clements, 296 S.W.2d 875, 879 (Tenn. 1956), stated:

> [U]ntil the court has finally adjudicated that the petitioners for adoption are suitable ones and that it is for the best interest of the child to be placed with them for adoption that no legal rights attach to either of the parties until said adoptive statutes are carried out.
> . . . .
> [T]here is no statute in this State which authorizes a party or

6

> parties to adopt a child by a mere private declaration or contract, and in the absence of such a statute, it cannot be done, because to allow it would be contrary to public policy of the State.

See also Bray v. Gardner, 268 F. Supp. 328, 332 (D.C. Tenn. 1967) (stating that an adoptive relationship cannot be created by private contract or by estoppel).

In Wright v. Holland, No. 01-A-01-9208-CV00311, 1993 WL 49560 (Tenn. Ct. App. Feb. 26, 1993), this Court addressed an issue similar to the one in the case at bar. In Wright, the issue addressed was whether a father continues to have a legally enforceable duty to support a minor child after he signs a surrender document which purportedly surrenders the child for adoption but where no petition for adoption was ever filed with the court because the prospective adoptive father decided not to adopt the child. Relying on In Re Petition to Adopt Clements, 296 S.W.2d 875, 879 (Tenn. 1956) for the proposition that no legal rights attach to either the natural parent or the adopting parent until a court order adjudicating a child's adoption has occurred, this Court held that the natural father's obligation to support his minor child continues until the entry of a court order of adoption. Wright, 1993 WL 49560, at *7.

Furthermore, T.C.A. 36-5-101(a)(5)(1996) states in part that:

> Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state and shall be entitled to full faith and credit in this state and in any other state. Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties.

Thus, it is abundantly clear from the express language of the statute that courts are prohibited from retroactively modifying child support orders. Rutledge v. Barrett, 802 S.W.2d 604, 606 (Tenn. 1991). The statute removes all discretion from the trial court to forgive support arrearages which accrue under a valid order of child support at any time prior to the filing of an action for modification. Id. Only prospective modifications of child support orders are authorized, and such prospective modifications are subject to the filing and notification requirements of T.C.A. 36-5-101(a)(5).

7

Father also argues that based upon Mother's failure to notify him that the adoption of Amber was not finalized, the equitable defenses of estoppel and laches preclude the court from ordering him to pay either future or past-due child support.  We note, however, that the supreme court has repeatedly stated that equitable defenses are not available as a defense to the enforcement of child support orders.  Rutledge, 802 S.W.2d at 607.

In the present case, Father signed an affidavit which purported to relinquish his parental rights to Amber, and Father's affidavit was filed with the Simpsons' petition to adopt Amber.  The Simpsons', however, voluntarily dismissed their petition to adopt Amber before a final adjudication of the adoption was obtained.  Thus, because the Simpsons did not obtain a court order adjudicating Amber's adoption and because the record contains no evidence that either party filed an action to modify the child support order pursuant to the Texas divorce decree, the trial court erred in forgiving the child support arrearage which had accrued under the Texas divorce decree subsequent to August 24, 1987, the date Father executed the affidavit relinquishing his parental rights.  We, therefore, reverse the judgment of the trial court which held that Father's child support obligations pursuant to the Texas divorce decree were irrevocably and absolutely terminated as of August 24, 1987 when Father filed his affidavit which purportedly relinquished his parental rights to Amber.

The judgment of the trial court is hereby reversed.  Costs on appeal are taxed to the Appellee for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.

8