IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE
_____

**AMANDA CAROL CROSLIN and**
**PHYLLIS CROSLIN BAKER,**

     Petitioners-Appellees,

                                      Smith Circuit No. 3536

Vs.                                  C.A. No. 01A01-9607-CV-00297

**DANNY KEITH CROSLIN, wife**
**BETTY JEAN CROSLIN and**
**STANLEY GARDNER HASKINS,**

     Respondents-Appellants.
_____

FROM THE SMITH COURT CIRCUIT COURT
THE HONORABLE JOHN A. TURNBULL, JUDGE, BY INTERCHANGE

Jessica Dawn Dugger and Gregory S. Gill of
Rochelle, McCulloch & Auds in Lebanon
For Respondents-Appellants, Croslin

Hugh Green of Lebanon
For Petitioners-Appellees, Croslin and Baker

*REVERSED AND REMANDED*

Opinion filed:



# FILED

**February 5, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

     This is an adoption case. Petitioners, Amanda Croslin and Phyllis Croslin Baker, the adoptive child's mother and maternal grandmother respectively, filed a petition to set aside the adoption of the child, Danna Elisabeth Croslin, by the maternal grandfather, Danny Keith

Croslin, and his wife, Betty Jean Croslin. Also named as a defendant in the petition is Stanley Gardner Haskins, the adoptive child's natural father. From the order of the trial court nullifying and setting aside the adoption, Danny Keith Croslin has appealed.[1]

The petition alleges that Amanda was not in a psychological condition to understand the ramifications of an adoption. The petitioners allege that Amanda did not have a guardian ad litem or independent counsel, and they claim that Amanda was emotionally upset, mentally disturbed, and legally incompetent at the time the Order of Adoption was entered. In an amended petition filed November 17, 1994, the petitioners further allege that the Amanda did not properly execute a consent for adoption or a surrender as required by T.C.A. § 36-1-114 (Supp. 1993). Finally, they claim that Amanda only signed the petition for adoption and the order of adoption because of undue influence, pressure, fraud, and misrepresentation. The answer to the petition denies the material allegations.

The hearing on the petition was originally set for July 21, 1995 before Judge Bobby Capers, the judge who granted the adoption. Judge Capers recused himself, however, because he felt there might be a conflict of interest, and the case was reset for August 31, 1995. The hearing lasted two days, August 31, 1995, and again on January 11, 1996.

The record reveals the following: Amanda Croslin gave birth to Danna Elisabeth Croslin on September 7, 1993 and was, at that time, almost sixteen years old and a high school junior. Although Amanda lived with her mother, she kept her pregnancy hidden until the night of the delivery. Amanda's parents and Danny Croslin's wife, Betty Jean Croslin, were present at the hospital on the night of the delivery.

There is a dispute in the testimony concerning the discussions in the hospital about adoption of the child. Betty Croslin testified that Amanda told her while they were in the emergency room that she did not want the baby, and that after the baby was born, Amanda asked Betty if she would take the baby. Betty's response at that time was that it was too soon to discuss something of that nature. Betty testified that Amanda stated that she had been thinking about it for seven months and that she wanted the baby to be adopted. Amanda, on the other

---

[1]Mr. Haskins did not file any pleading in the trial court and is not a party to this appeal.

hand, testified that her father and Betty asked her if they could adopt the child and insisted that this would be the best procedure to follow. It is undisputed that both Amanda and her mother felt that it was not possible for them to take and care for the child at that time.

On September 9, 1993, Mr. and Mrs. Danny Croslin; Amanda's mother, Phyllis Croslin Baker; and the father of the child, Stanley Haskins, met with attorney Jim Dance to discuss an adoption. At that meeting, Dance explained to the persons present the ramifications of the adoption and the legal obligations of the parties and then agreed to prepare the adoption petition. On September 13, 1993, all the parties, including Amanda, met in Dance's office to sign the adoption petition. Dance testified that at this meeting he explained the effect of the adoption to Amanda and Haskins and told them that they would have no legal rights to visitation. Dance stated that there was no indication that Amanda was under any stress or any indication that she did not understand what he was telling her. As Dance explained, the family and Haskins seemed to be happy with the solution to the problem, and that it seemed apparent that Amanda would continue to be a part of the child's life.

All of the concerned parties joined in and signed the adoption petition, and it was filed in the Circuit Court for Smith County on October 8, 1993. On that same day, a hearing was held. On October 12, 1993, an order for adoption signed by all concerned parties was entered granting the adoption to Danny Keith Croslin and wife, Betty Jean Croslin. The order specifically provided that consent to the adoption was given by the joinder of all necessary parties in the petition, and that no interlocutory decree of adoption is necessary because the petitioner, Danny Keith Croslin, is the grandfather of the adoptive child.

Judge Capers testified that at the adoption hearing he explained to Amanda and Stanley Haskins, the natural parents of the child, that they were giving up their rights as parents and asked them if they understood the nature of the proceeding. Judge Capers testified that they appeared to understand that their rights as parents would be terminated. Stanley Haskins testified that they were told their rights would be terminated. Amanda testified, however, that she understood that she would have visitation rights with the child.

Amanda testified that she was scared to tell her mother about the pregnancy, and didn't want to hurt or embarrass her. Amanda testified that she was scared and in pain in the

emergency room prior to delivery. She stated that she was ashamed and told Betty Jean Croslin that she didn't want the baby. After the delivery when Amanda was in her hospital room, Betty and Danny Croslin both asked her if they could adopt the baby. Amanda testified that Betty and Danny Croslin were actively seeking to adopt a child before they learned about her pregnancy, and that they said it would make them very happy if they could adopt hers. She claims that they told her that she would always be a part of the child's life, and that the child would know who she was.

Amanda testified that her father told her that if she kept the baby she would have to drop out of school and sign up for welfare. She also claims that her father told her that he would not give her assistance or support in raising the child. Amanda stated that she consented to the adoption because it was what everybody wanted, it was making her father happy, and she thought it would bring them closer together. Amanda stated that her mother would not give her any advice or support in her decision.

Phyllis Croslin Baker testified that she had no way to take the child into her home after the child was born and was anxious for the adoption to take place. She indicates in her testimony that she let her daughter know that she was strongly in favor of the adoption and perhaps that influenced her daughter in agreeing to the adoption. She states that her daughter understood that an adoption terminated parental rights, but that her daughter was of the impression that she would be a part of the child's life. Throughout September 1993 until February 1994, Amanda visited the baby approximately once a week and called two or three times a week to check on the baby. Ms. Baker testified that in February 1994, Betty and Danny Croslin began to have marital problems, and they were subsequently divorced by final decree entered August 5, 1994. However, they remarried eighteen days later. She testified that for a good part of the time while the Croslins were separated she and Amanda took care of Danna every day for the entire day while Danny Croslin was working. At the end of August 1994, when Amanda returned to school, Danny Croslin told Amanda that she could see Danna every other weekend instead of the previous rather unlimited visitation she had experienced. This precipitated the filing of the instant petition on September 19, 1994. Ms. Baker also testified that Amanda was usually quite calm and reserved but that following the birth of the child, Amanda became highly emotional

4

and on occasions became so angry and upset that she had to call Danny Croslin to come over and assist in calming her down. She states that Amanda was greatly upset and in a highly emotional state for a long period after the child was born.

Danny Croslin testified that he did not influence his daughter to consent to the adoption but to the contrary told her it was her decision. He admitted that he told her that if she decided to keep the baby she would probably have to go on welfare and leave school. He stated that he told her he would help her as much as he could financially. He categorically denied that he told her that he would not give her any financial support. In his opinion, she did not appear to be under stress to the extent that she did not understand what she was doing and that she readily consented to the adoption.

The trial court's judgment entered February 14, 1996, set aside the order of adoption. The judgment states:

> 1. The adoption of Danna Elisabeth Croslin is hereby set aside and nullified on the grounds that:
>
> a. The Court lacked jurisdiction to grant said adoption and it is therefore void because the adoptive child's natural mother, Amanda Carol Croslin, was incompetent to consent to said adoption and no measures were taken to cure her incompetency;
>
> b. In addition to the above or in the event that the Court is mistaken on the issue of jurisdiction, this adoption is hereby nullified because undue influence rising to the level of intrinsic fraud was asserted on the natural mother at the time of the adoption, therefore the court relieves the plaintiff, Amanda Carol Croslin, from the Order of Adoption herein complained of pursuant to T.R.C.P. 60.02.

The judgment provided that Danny and Betty Croslin would retain custody of the child pending any change in circumstances as related to them. The judgment also established visitation rights for Amanda and ordered her to pay child support.

Appellant presents two issues on appeal:

> 1. Whether the trial court erred in holding that the surrender of and adoption of the child did not comply with the requirements of the adoption statutes in effect in the State of Tennessee at the time of the adoption?
>
> 2. Whether the trial court erred in holding that the mother's consent to the adoption was obtained by undue influence.

Appellant asserts in his first issue that the trial court erred in holding that the parties

failed to comply with the adoption statutes.

Adoption in Tennessee is governed by statute, T.C.A. § 36-1-101 *et seq.*, and to effect a legal adoption, there must be strict compliance with the statutes. ***Clements v. Morgan***, 201 Tenn. 94, 296 S.W.2d 874 (1956). Initially, we must point out that the paramount consideration in adoption cases is the welfare of the child, not the interests and rights of the adults. ***In re Petition to Adopt Glenda Sue Clements***, 201 Tenn. 98, 296 S.W.2d 875 (1956).

Appellees assert that the trial court did not comply with the provision of T.C.A. § 36-1-114 (Supp. 1993)[2] providing for the surrender of the child for adoption. Appellant contends that pursuant to T.C.A. § 36-1-108 (a)(1991)[3], compliance with § 36-1-114 is not required. The trial court found that there was no compliance with T.C.A. § 36-1-108 (a)(1991) because a guardian *ad litem* was not appointed for Amanda. T.C.A. § 36-1-108 (a)(1991) provides:

> **36-1-108. Parties to proceedings - consent of parent or guardian - Service of process. -** (a) Except as provided in this part and if they are living and have not released all rights to the child and have not consented to adoption as provided in this part, the parents or surviving parent or guardian of the person of the child must be a party or parties of record to the proceeding or must give written consent to the adoption, which written consent must be filed with the petition. If a parent is incompetent to give consent, then a guardian ad litem shall be appointed for the incompetent parent to give or withhold consent, unless prior thereto in an independent prodeeding in the circuit or chancery court a representative of the department or the director of a license child-placing agency has been appointed guardian of the person of the child with the authority to consent to the adoption in loco parentis. If parents are divorced, both parents shall have notice of the hearing, either by service of process or by publication. When the child is by blood a grandchild, a nephew or niece of one (1) of the petitioners or is the stepchild of the petitioner and the natural parent(s) joins in the petition to adopt for the purpose of giving consent to the adoption and signs the petition as a co-petitioner, no further consent of, or surrender by, the natural parent(s) shall be required as the act of joining in the petition shall be deemed to be a complete consent and surrender.

Although Amanda was a minor (sixteen years of age) at the time of the adoption,

---

[2]The petition in this case was filed on September 19, 1994; therefore, this case is governed by Tennessee's adoption statutes in place at that time. T.C.A. § 36-1-114 (Supp. 1993) has since been repealed.

[3]T.C.A. § 36-1-108 (1991) has been transferred to T.C.A. § 36-1-117 (1996).

she was competent to give her consent to the adoption. T.C.A. § 36-1-109 (1991)[4] provides:

> **36-1-109. Parent under eighteen -- Consent. --** A parent who has not reached eighteen (18) years of age shall have legal capacity to give consent to adoption and to release such parent's rights in a child, and shall be as fully bound thereby as if the parent had attained eighteen (18) years of age.

Appellees argue that the trial court based its finding of incompetency on Amanda's condition of suffering from severe emotional distress, depression, and postpartum depression, not because of her age.

We do not believe that the record establishes that Amanda was incompetent because of her emotions. There was no expert proof introduced that Amanda was not cognizant of what she was doing, nor does Amanda dispute that she knew that she was surrendering her parental rights. Amanda contends that she was led to believe that she would have unlimited visitation rights with the child, and the record establishes that as long as these visitation rights were granted she did not protest or in any way question the adoption proceedings. We do not dispute that Amanda was probably depressed or emotionally distraught following this rather traumatic experience, but it is not unusual for there to be depression and distress following the birth of a child, even under the best of circumstances. If emotional distress meant that a parent was always incompetent to consent to an adoption, we would rarely have adoptions in this state.

Since we do not believe that Amanda was incompetent at the time of the adoption, we disagree with the trial court that a guardian *ad litem* was required. We believe that the adoption was in compliance with T.C.A. § 36-1-108, and therefore, compliance with T.C.A. § 36-1-114 was not required. No further consent of Amanda was required because she joined in the original petition. Amanda's act of joining in the petition "shall be deemed to be a complete consent and surrender." T.C.A. § 36-1-108(a).

However, even if Amanda was incompetent to consent, she could not challenge the procedural aspect of the adoption now that the order is final. T.C.A. § 36-1-127 (1991)[5] provides in pertinent part:

> **36-1-127. Binding effect of adoption. --**
> (b) After the final order of adoption is signed, no party to an adoption proceeding, nor anyone claiming under such a party,

---

[4]T.C.A. § 36-1-109 (1991) has been transferred to T.C.A. § 36-1-110 (1996).

[5]T.C.A. § 36-1-127 (1991) has been transferred to T.C.A. § 36-1-122 (1996).

> may later question the validity of the adoption proceeding by reason of any defect or irregularity therein, jurisdictional or otherwise, but shall be fully bound thereby, save for such appeal as may be allowed by law.

In this case, the final order of adoption has been signed by all parties and has been made final. Amanda Croslin and Phyllis Baker did not appeal that final order within thirty days of its entry, but instead, 11 months later they filed a petition to set aside the adoption that questioned the validity of the proceeding. The statute does not allow a later collateral attack, even if the defect is jurisdictional.

The policy behind T.C.A. § 36-1-127 is expressed in T.C.A. § 36-1-101 (1991)[6] which states, "The primary purpose of this part is to: . . . (3) protect [children] from interference, long after they have become properly adjusted to their adoptive homes, by natural parents who may have some legal claim because of a defect in the adoption procedure." *See also Brown v. Raines*, 611 S.W.2d 594, 596 (Tenn. App. 1980). We cannot agree with the trial court's finding that Amanda was incompetent to consent to the adoption, and we find that there was compliance with the statutory provisions pertaining to adoption.

In the second issue for review, appellant asserts that the trial court erred in finding that there was "undue influence rising to the level of intrinsic fraud . . . asserted on the natural mother."

A final order of adoption is subject to the provisions of Tenn. R. Civ. P. 60.02, and proven fraud or undue influence is good grounds for vacating an adoption order. *In re Bishop*, 678 S.W.2d 471, 472 (Tenn. App. 1984). The parent who consented to the adoption must present clear and convincing evidence of undue influence in order to set aside the adoption order. *Id.* In *Scott v. Pulley*, 705 S.W.2d 666 (Tenn. App. 1985), this Court defined undue influence:

> Undue influence has been defined as that influence which controls the mental operations of the one influenced by overcoming his power of resistance and thus obliging him to adopt the will of another, thereby producing a disposition of property or the performance of some act by the influenced person which he otherwise would not have done.

*Scott*, 705 S.W.2d at 669 (quoting 50 A.L.R.3d 918, 920 (1973)).

While we believe that this was a trying time for Amanda, we respectfully disagree with

---

[6]T.C.A. § 36-1-101 (1991) has since been amended.

8

the trial court that she has presented clear and convincing evidence of undue influence. Amanda testified that it was not possible for her to take the

child home after the birth. She said that, realistically, her only choices were to give the child up for adoption or quit school and try to raise her on her own. While she stated she had faith she could raise the child, Amanda also admitted that it would be very difficult for her to be the full-time parent: "Right now, to do that, it would be hard for me to bite off the job of taking care of her, you know, full-time right now. But as long as this adoption is intact, when I do feel that I can take the job, I don't have any rights." We do not believe that Amanda's "power of resistance" was overcome, nor that she was forced to "adopt the will of another." *Scott*, 705 S.W.2d at 669. At the time of the birth, her choices were somewhat limited due to the circumstances of her life, not because of the influence of her father. In *Scott*, this Court addressed pressing circumstances:

> There is little doubt that there is always 'duress of circumstances' present causing a natural parent to consent to surrender and/or place for adoption that parent's child. However, as was said in *Barwin v. Reidy*, 62 N.M. 183, 307 P.2d 175 (1957), 'What natural parent would ever consent to the adoption of his or her child in the absence of duress of circumstances.'

*Scott*, 705 S.W.2d at 670.

In *In re Bishop*, 678 S.W.2d 471, this Court faced a similar question. The natural mother petitioned the court to set aside an order of adoption. The child had been adopted by his grandparents. *Id.* This Court stated, "Plaintiff's testimony that she was distressed and that her mother urged the adoption does not constitute evidence of fraud or undue influence sufficient to set aside the adoption under T.R.C.P. No. 60.02(2)." *Id.* at 472. The Court also stated that "the fact that plaintiff now has her life 'in order' is an insufficient basis to set aside the adoption under T.R.C.P. No. 60.02(5)." *Id.*

We do not find from this record clear and convincing evidence that undue influence was asserted on Amanda to influence the adoption. We must respectfully disagree with the trial court's finding in that regard. Accordingly, the judgment of the trial court is reversed[7], and this

_____

[7]When Danny Croslin and Betty Croslin were divorced, the decree specifically provided that by consent of Betty Croslin her parental rights to the adoptive child, Danna, terminated. Although Betty Croslin was a party to the trial court proceedings in this case, she

case is remanded to the trial court for such further proceedings as are necessary.  Costs of the

appeal are assessed against the appellees.

                                              _____

                                              **W. FRANK CRAWFORD,**
                                              **PRESIDING JUDGE, W.S.**

**CONCUR:**


_____

**DAVID R. FARMER, JUDGE**


_____

**HOLLY KIRBY LILLARD, JUDGE**

---

did not appeal.  Therefore, she is not before this Court and this Court has no jurisdiction insofar as she is concerned.  ***Town of Carthridge, Tennessee v. Smith County***, No. 01-A-01-9308-CH00391, 1995 WL92266, (Tenn. App. M.S. Mar. 8, 1995) ***see also Torres v. Oakland Scavenger Co.***, 487 U.S. 312, 314, 108 S.Ct. 2405, 2407 (1988).  The effect of the provision in the divorce decree was not an issue before this Court.